RAMSAY McHENRY *vs.* JOHN T. MARR and PHILIP T. EMMART, trading as MARR & EMMART.

*Contract of Bailment— Measure of Damages—Negligence—Liability of Bailee for the acts of his agent— Waiver—Practice.*

The plaintiffs were lessees for years of a certain building and premises in Baltimore, which they used as a bowling alley. The lease, which was executed by the lessor only, provided that the lessees should "at their own expense, keep said property in repair." In January, 1870, the proprietor of the lot adjoining on the east, gave notice to the lessor of his intention to make certain demolitions and excavations upon his property, which were accordingly begun in March, 1870. On the 14th of April, 1870, this work having so far advanced that the east wall of the bowling alley must have fallen unless secured, and the plaintiffs having done nothing to secure it, the lessor obtained permission from them to enter upon the premises and rebuild the wall, which the plaintiffs granted upon condition that the repairs should be done in a substantial manner, and that the rent should cease during their progress. On the 3d of June, 1870, the new wall, which

McHenry *vs.* Marr & Emmart.

had just been constructed, fell, carrying with it other portions of the building, whereupon the plaintiffs abandoned the premises for the residue of their term, and sued the lessor in damages for breaking up their business and rendering the property untenantable. Upon appeal by the lessor from judgment for the plaintiffs, it was HELD:

1st. That the value of the residue of the term was not an element in the ascertainment of the measure of damages.

2nd. That the measure of damages was the loss sustained by the plaintiffs in consequence of the negligent or unskilful discharge by the defendant of a commission which he had undertaken to perform.

3rd. That evidence offered by the defendant that the person employed by him to build the wall was reputed to be skilful and competent was inadmissible.

4th. That the degree of care required of the defendant in the building of the wall, was such ordinary care as prudent men usually exercise in regard to their own property.

5th. That the undertaking of April 14th, 1870, was inconsistent with the continuance of the condition to repair, as far as the rebuilding of the wall was concerned, and was a waiver by the defendant of all liability of the plaintiffs on that account.

A rule of Court provided as follows : "After all testimony intended to be produced by plaintiff and defendant shall have been introduced, the Court will expect to be furnished with all the prayers which the parties respectively propose to found thereon, which shall be argued together. * * * And the Court, upon the whole case, will give such instructions as may appear requisite to place the cause fully before the jury. After the jury shall have been so charged or instructed, * * no additional prayer will be received, nor additional evidence given to the jury, *unless by permission of the Court.*" HELD :

1st. That there is nothing in this rule which requires every written instrument, given in evidence, to be first interpreted by the Court, before its legal effect can be commented on before the jury.

2nd. That the right of the Court to construe instruments at any time during the trial of the cause, even if not expressly reserved, is one of its necessary incidental powers.

APPEAL from the Circuit Court for Cecil County.

The facts are stated in the opinion of the Court.

The following is the defendant's third bill of exceptions.

The plaintiffs offered the following prayers:

1. If the jury find from the evidence in the cause that the relation of landlord and tenant existed between the defendant and the plaintiffs of the premises mentioned in the declaration, and which were used by the plaintiffs for the prosecution of their lawful business at the time of the happening of the injuries alleged, and that during the continuance of said relation the defendant applied to the plaintiffs for permission to make additions to and to reconstruct the partition wall between said premises and those of his adjoining neighbor, and alleged to be rendered necessary by the improvements which were to be made upon the latter, and that the said defendant promised to do said work within a reasonable time, to wit, within four or six weeks, and that the plaintiffs gave such permission upon the condition that their rent should abate during the time such work was being done; and if they further find that the old wall was accordingly removed, and that the proposed new work was at once commenced by the defendant, and performed in such a negligent and unskilful manner, and the object constructed was of such insufficient dimensions, or of such imperfect workmanship, or was subjected by the defendant, or his agents, to such treatment, that if it fell down shortly after its completion and before the restoration of said premises to the plaintiffs in suitable condition for the prosecution therein of their customary business, and so injured and exposed the said building and premises as to render them unfit or inconvenient for the purposes for which they had rented it, and that defendant permitted said premises to remain in that condition for a long period, and until the end of plaintiffs' term; and if they further find, that by reason of the falling of said wall, and the injury to the said building, the plaintiffs were

prevented from or impeded in the prosecution of their lawful business, and that they sustained injury and loss thereby, that then the jury must find for the plaintiffs, and may give to the plaintiffs, by their verdict, such reasonable damages as they may find plaintiffs sustained by reason of such injuries.

2. That if the jury find that the premises mentioned in the declaration had been rented by the plaintiffs from the defendant for a lawful business, to wit, a bowling and drinking saloon, and that during their lease and occupation of said premises, by reason of the improvement of the adjoining building, it became necessary to renew or reconstruct the east end of the building in question; and if the jury further find that defendant undertook and agreed with plaintiffs to renew the east wall aforesaid upon the premises, and which had been rendered necessary by improvements commenced in the adjoining building, and that the plaintiffs surrendered the use of so much of the building as was necessary for the purpose; and if they find that the said defendant, after removing the old wall, failed or neglected to rebuild a good and sufficient new wall, and that the said building was suffered thereby to remain in such an injured and exposed condition as to render it unfit or inconvenient for the prosecution of the plaintiffs' business during the residue of said lease, then the jury must find for the plaintiffs and render such damages as they may find was sustained by the plaintiffs by reason aforesaid in their business.

And the defendant offered the following prayers:

1. That if the jury find that the plaintiffs were the tenants of the defendant under the lease offered in evidence, and further find that on the 14th of April, 1870, in consequence of improvements which were in course of construction on the adjoining lot of Rennert, the said demised premises were in a condition requiring repairs, or the building or rebuilding of a wall, to put or keep

them in tenantable condition, that then, under the provisions of said lease, the defendant, on the said 14th of April, 1870, prior to his alleged agreement with the plaintiffs, was under no obligation to the plaintiffs to make such repairs or build any wall, or do anything else for the repair or preservation of the property.

2. If the jury find the facts stated in the defendant's first prayer, and further find that the witness Hill, as his agent, undertook to have a wall put up on the east side of the demised premises, for and on account of the defendant, and for the preservation of his property, and that his agreement with the plaintiffs was to suspend the rent until the work was completed, in consideration of the interruption it might occasion to their business, that then the plaintiffs are not entitled to recover, unless they find that the defendant was guilty of negligence; and if the jury further find that the defendant and his agents used such ordinary care in the erection of said wall as prudent men usually exercise in regard to their own property, the plaintiffs are not entitled to recover.

3. That if the jury find the facts stated in the defendant's first prayer, and that the witness Hill, as his agent, agreed with the plaintiffs to put up a wall along the east side of the demised premises, and also find that the plaintiffs knew that neither Hill nor the defendant had any skill or experience in building, nor capacity to build said wall in person, and that it was understood at the time, by and between the parties, that said wall was to be erected by sub-agents to be employed by said Hill; and further find that said Hill, acting in good faith and with honest intent to have a good and sufficient wall erected, did employ a master-builder of well established reputation and experience in such matters, with instructions to put up such wall without any limit as to cost, and that said wall was built by him as in his judgment was sufficient, that then the plaintiffs are not entitled to recover.

4. That if the jury find the facts stated in the defendant's first prayer, that then the defendant is not liable for so much of the loss and injury complained of as the jury may find was occasioned by the acts of said Rennert and would have been suffered if defendant had not undertaken to build the wall mentioned in the evidence, even although the jury should find that said wall was negligently built.

5. That if the jury should find for the plaintiffs, they are not at liberty to make speculative or contingent profits which the plaintiffs might have made, the basis of their verdict, but can only allow for such injury as they may find that plaintiffs actually sustained, resulting directly from and caused by, the negligence of which the jury may find that the defendant was guilty.

6. That the gist of the action is negligence, the burden of proving which is upon the plaintiffs, and the fact that the wall, built by the direction of Hill as agent for defendant, failed to answer the purpose for which it was intended, and that it fell down shortly after it was built, and that a better wall might have been built, are not sufficient to establish such negligence, if the jury believe from the evidence that the defendant used ordinary care in the selection of suitable persons to build the wall, and that the workmen used ordinary care in the construction of it.

7. That even if the jury find that the defendant was negligent, the plaintiffs are not entitled to recover for any of the injuries complained of which were caused by the plaintiffs' own neglect, and which, by the use of ordinary care on their part, might have been avoided.

The Court, (WICKES and STUMP, J.,) granted the plaintiffs' first prayer with the following modification:

If the jury find from the evidence in the cause that the plaintiffs were the tenants of the defendant under the lease offered in evidence, of the premises mentioned in the

declaration, and which were used by the plaintiffs for the prosecution of their lawful business at the time of the happening of the alleged injuries, and that during the continuance of said tenancy the witness Hill, as defendant's agent, applied to the plaintiffs for permission to tear down the old partition wall between said premises and those of Rennert, and to build a new one, alleged to be necessary on account of improvements which Rennert was making to his property, and that said Hill, as agent for defendant, promised to do said work within four or six weeks, and restore the premises to the plaintiffs in good condition, for the purposes of plaintiffs' business, and that plaintiffs gave such permission upon the condition that their rent should abate during the time such work was being done, and that the defendant, in virtue of such permission, tore down the old wall and proceeded to build the new wall, and completed it within the time limited; and shall further find that the defendant or his agents did not use such ordinary care in the building of said wall as prudent men usually exercise in regard to their own property, but built the same in a negligent or unskilful manner; or after having been completed, said wall was subjected by the defendant or his agents to such negligent treatment that it fell down shortly after its completion, and so injured and exposed the said building and premises as to render them unfit for the prosecution of the business for which the plaintiffs had rented them, and in which they had been engaged; and further find that defendant permitted said premises to remain in that condition until the end of the plaintiffs' tenancy, that then the plaintiffs are entitled to recover such damages as the jury may find from the whole evidence they have really sustained.

And refused to grant their second prayer.

The Court granted the defendant's first and fifth prayers, (the fifth prayer being conceded by the plaintiffs,)

and also granted his second prayer, after modifying it by striking out the word "*gross*" before the word "negligence," but refused to grant it as offered, and refused to grant the defendant's third, fourth, sixth and seventh prayers.

To the granting of the plaintiffs' first prayer as modified, and the refusal to grant the defendant's third, fourth, sixth and seventh prayers, and his second prayer as offered, the defendant excepted.

The defendant then again offered his fourth prayer, with the following addition:

"Unless the jury further find that the defendant did in fact release the plaintiffs from their obligation under the lease to make repairs, or waive his rights for the breach thereof."

This the Court refused to grant, and gave the jury the following instruction:

"If the jury believe the facts stated in the first instruction granted by the Court to the plaintiffs, and that in virtue of the agreement between the witness Hill, as agent of the defendant and the plaintiffs, the defendant had the wall built within the time limited, but that the work was done in a negligent and unskilful manner, in consequence of which the wall fell within six or eight days after it was finished, and rendered the premises unfit for the prosecution of the plaintiffs' business, that then the plaintiffs were under no obligation to rebuild said wall."

To the refusal to grant his fourth prayer as amended, and to the Court's instruction, the defendant excepted, and the judgment being for the plaintiffs, he appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, MILLER and ALVEY, J.

*Henry W. Archer*, for the appellant.

The Court below erred first in refusing to permit the witness Hill to testify as to the value of the plaintiffs' leasehold interest. *Hosking vs. Phillips*, 3 *Exchq.*, 168 ; *Smith vs. Peat*, 9 *Exchq.*, 161.

2nd. In refusing to permit a witness to testify as to the character and reputation of John House, as an experienced, skilful and reliable master builder. *Hall vs. Smith*, 2 *Bing.*, 156 ; *Sutton vs. Clarke*, 6 *Taunt.*, 29.

3rd. In granting plaintiffs' first prayer as modified. It ignores the evidence tending to prove that the old wall must have fallen and that all the damage complained of would have suffered if McHenry had made no attempt to secure the premises. And it charges him not only with the injuries resulting from his own alleged negligence, and the negligence of the men by whom the wall was built, but also with damages resulting from plaintiffs' neglect to repair. 1 *Smith's Lead. Cases*, 294, 295 ; *Austin vs. Manchester Railway Co.*, 10 *Com. Bench*, 454 ; *Downs vs. Cooper*, 2 *Adol. & Ellis*, 256 ; *West vs. Blakeway*, 2 *Man. & Gran.*, 729, 750.

4th. In refusing to grant the defendant's third, fourth, sixth and seventh prayers.

5th. In refusing to permit defendant's counsel to state to the jury (as was stated in the lease offered in evidence by plaintiffs) that plaintiffs are bound by their covenant to keep the premises in repair, and surrender them in good order at the termination of the lease. This was equivalent to withdrawing from the jury the lease which was already in evidence, and was calculated to mislead, and did mislead them. 1 *Taylor's Ev.*, 756 ; *Hinton vs. Dibbin*, 2 *Adol. & Ellis*, (42 *Eng. C. L.*,) 648, 650 ; *Woodfall's L. & T.*, 643 ; 2 *Smith's Lead. Cases*, 280.

There is nothing in the rules of Court to deprive the defendant's counsel of the right claimed by him to call the attention of the jury to, and comment upon the evidence in the case.

*Henry V. D. Johns,* for the appellees.

The question to the witness Hill, was inadmissible upon two grounds:

1st. The witness was not shown by the evidence, to be competent to testify as to the matter inquired of.

2nd. The subject-matter of the question, to wit: the value of the leasehold interest, as an isolated fact, detached from the value of the plaintiffs' business was not in issue.

The witness was only a property agent, leasing property and collecting rents, and had only a general acquaintance with the kind of business, that the former tenants did; but had no particular knowledge in regard to its profits.

He had no knowledge of the amount of the business done by the appellees, or of the revenues or profits derived therefrom.

The plaintiffs' claim was based upon the fact, as alleged in their *narr.* that their entire business was broken up and destroyed and their custom and patronage prevented, and the use and occupation of the premises by them made impossible. The subject-matter of the question was not the test of damages. *Moore vs. Schultz,* 31 *Md.,* 418.

The experience, skill or reliable character of the mechanics employed by the appellant, are not involved in the issue in this case. It is the carelessness or neglect of a skilful employé, as well as the employment of an unskilful employé, to which the law attaches the responsibility. *Deford vs. State, &c.,* 30 *Md.,* 179.

Nothing in this appeal can be considered, except the action of the Court in refusing to grant the fourth prayer of the appellant as amended, and in giving the instruction in lieu thereof, and appellant's fourth bill of exceptions.

By the appellant's third bill of exceptions it appears that the plaintiffs offered two prayers. The Court rejected the second and granted the first with certain modi-

fications.   The defendant offered seven prayers, of which
the Court granted the first and fifth, and the second by
striking out the word "gross," and refused to grant the
third, fourth, sixth and seventh, to which action the
record goes on to say, the defendant excepted ; but no bill
of exceptions appears to have been signed or sealed by
the Court below.   This brings it within the rule laid
down in numerous cases. *Ellicott vs. Martin, Love & Co.,*
6 *Md.,* 516 ; *Milburn vs. State,* 1 *Md.,* 13 ; *Davis vs. Wil-
son,* 2 *H. & J.*, 345 ; *Planters' Bank vs. Bank of Alexan-
dria,* 10 *G. & J.,* 346 ; *Alexander's British Statutes,* 132.

If the Court however should consider the propositions
embraced in the several prayers as properly before it,
then the appellees submit that no error is to be found in
the action of the Court below.

The action of the Court in reference to appellant's
second prayer was clearly right.   The effort in this
prayer, was to establish *gross* negligence as the test of
liability, and to submit to the jury the question of its
existence in this case, without any guidance from the
Court as to what constituted gross negligence

The Court had already in its first instruction to the
jury, defined the degree of negligence necessary for them
to find in order to find a verdict for the plaintiffs, and in
doing so, used almost the same language used by this
Court in the case of the *Northern Central Railway Co. vs.
State, use of Price, &c.,* 29 *Md.,* 438.

The questions of fact, to wit: the existence of this con-
tract, and the breach of the obligation or legal duty,
growing out of it, were both submitted to the jury by the
instruction which the Court gave in lieu of the prayer
and the amendment.   Here was a sufficient contract, out
of which, from a breach, would flow a legal liability.
The appellants *undertook* to do the work, and therefore
came within the rule : " That the confidence induced by
undertaking any service for another, is a sufficient legal

consideration to create a duty in the performance of it."
*Broom on Common Law,* 684, 89 *Law Library,* 467.

The sixth prayer of the appellant was properly refused,
because it seeks first to take out certain facts from the evi-
dence, and asks the Court upon those facts to pass upon
the question of negligence as a matter of law, when that
question should have been left to the jury upon all the
evidence in the case. *Dougherty vs. Baltimore and Ohio
Railroad Co.,* 36 *Md.,* 380.

And secondly, because it takes out of the case, the
isolated fact of the *construction* of the wall, and submits
that as the only test of negligence, when the evidence
showed, not merely negligence in the *construction* of the
wall, but in the treatment to which it was subjected im-
mediately after construction, which treatment was in fact,
one of the principal causes relied upon at the trial, to
show negligence.

The appellant's seventh prayer was properly refused,
because there was no evidence in the case whatever, upon
which such a prayer could have been granted. *Dearborn
vs. Cross,* 7 *Cowen,* 48 ; *Delacroix vs. Bulkley,* 13 *Wend.,*
75 ; *Allen vs. Jaquish,* 21 *Wend.,* 633.

In the absence of evidence establishing the contrary,
this Court will assume, that the Court below acted rightly
in rejecting this proposition. The presumption is, that
the Court ruled correctly, &c. *Clemens vs. Mayor, &c. of
Balt.,* 16 *Md.,* 202 ; *Reynolds vs. Negroes Juliet, &c.,* 14
*Md.,* 118 ; *Burtles vs. State,* 4 *Md.,* 273 ; *McTavish vs.
Carroll,* 17 *Md.,* 1.

The Court properly sustained the objection of the plain-
tiffs, complained of in the appellant's fourth bill of ex-
ceptions.

1st. Because the defendant sought to make the jury the
tribunal to construe a written instrument.

2nd. Because his proposed argument was in direct
opposition to the instructions of the Court upon that sub-
ject.

Bowie, J., delivered the opinion of the Court.

The appellees, as co-partners, claiming possession of a certain messuage and premises in the city of Baltimore, known as the "Monumental Bowling Alley," with the appurtenances, sued the appellant in the Circuit Court for Harford County, and by their *narr.* averred, that being possessed of said messuage, in which before and at the time of the committing of the grievances thereinafter alleged, they carried on a remunerative business, as proprietors and managers of the bowling alley and public bar, then and there kept open for the patronage of the public; whilst being so occupied, the defendant requested permission of plaintiffs to enter upon said premises and secure the east wall of the bowling alley building, and do other repairs, etc., in and about said building, then and there being, viz: on or about the 14th of April, 1870, which permission the plaintiffs gave the defendant, with the proviso, that he should exercise due care, and make said repairs and alterations in a substantial and skilful manner.

The plaintiffs averred that the defendant entered upon the premises and made the repairs and alterations in a wrongful, negligent and unikilful manner, and omitted to use due care and skill in the construction of the new wall, and in fact, did construct the wall, or a portion thereof, out of improper and insufficient materials, so that about the 3d of June, 1870, the new wall constructed by the defendant, gave way, and fell down, and caused to fall with it, a large portion of said bowling alley building, so as aforesaid occupied and used by the plaintiffs; by reason of which, the plaintiffs were necessarily and substantially evicted from said messuage and buildings, and were prevented and debarred from realizing the gains and profits, which they would otherwise have made, amounting to five thousand dollars.

And the plaintiffs further averred, that by reason of the acts and negligence of the defendant, their entire

business was broken up and destroyed, and their custom and patronage prevented, and the use and occupation of the messuage and buildings made impossible

To which *narr.* the defendant pleaded not guilty and issue was joined thereon.

At the trial of the cause, the appellees, plaintiffs below, offered evidence to prove, they were tenants of the defendant, (the appellant,) from the 1st of April, 1869, and proved and offered in evidence an agreement *executed by the defendant*, purporting to be made on the 1st of April, 1869, by the appellant of the first part, and the appellees of the second, whereby the appellant, leased to the appellees, the Monumental Bowling Alley, together with the stable in the rear thereof, from the 1st of April, 1869, to the 1st of April, 1871, at and for the yearly rent of $3000, payable in equal monthly instal·ments, and the appellees *covenanted* that they would promptly pay said rent, and *that they would at their own expense keep said property in repair*, etc., and that at the expiration of said term, they would surrender said premises, with all repairs, and improvements, that may have been made, and all advantages secured therefor, in good order, unavoidable wear and tear excepted.

This instrument, was signed Ramsey McHenry [seal] per Thos. Hill, but not signed by the appellees.

The appellees further offered evidence to prove the premises were in good repair in January, 1870, when Robert Rennert, the proprietor of an adjoining lot on the east side, gave notice to the defendant, of his intention to make certain improvements and excavations on his property, and on or about the 15th of March, 1870, commenced said excavations, etc., and took down his adjoining building, which was attached to the back building of the demised premises ; that on the 14th of April, 1870, Rennert, had removed his adjoining building, and his work had so far progressed, that the east wall of the back

building binding on Rennert's, must necessarily have fallen down, when Rennert's improvements were completed, if nothing were done to prevent it, and up to that time, plaintiffs had done nothing to secure said wall or prevent its falling.

The appellees further offered to prove, that the appellant by his agent Thos. Hill, applied to them on the 14th of April, 1870, for permission to use about ten feet along the east wall of the bowling saloon, for the purpose of securing at once, the east wall of the bowling alley building and proposed to make an abatement of $100 per month from the rent, until the part was restored—which proposition being declined, the appellant by said Hill his agent, offered to abate all the rent, from that time, until the wall proposed to be built, should be completed, and the premises restored to plaintiffs in good condition, and the appellees gave him permission to enter and occupy so much of said back building, as was covered by two of the eight alleys, into which it was divided.

The appellees further proved, that a wall was erected on said east side of the back building, by men employed by the appellant; that said wall was negligently built, and fell down on the 3rd of June following; that they ceased to do business for the residue of the term, and could not have successfully carried it on, and gave notice to their sub-tenants, not to pay any more rent.

That the wall was not repaired or rebuilt until after their term had expired.

They also offered evidence of written notice from appellant to them, dated June 6, 1870, that under the terms of their agreement with him, they were held responsible for the repair of the property, and incidental expenses, and requiring them to take steps at once to secure the property.

On cross-examination of one of the plaintiffs, it was proved that the appellant (the defendant) was a farmer,

residing in Harford County, and that Hill, was a real estate broker, and neither of them, had any skill or experience in building. The defendant, to support the issue on his part, proved by said Hill, that he was a real estate broker, in Baltimore City, and for many years had charge of the demised premises, as agent for defendant, and was acquainted with the value of leasehold property, in said city, and propose to ask the said witness, what in his judgment, was the value, on the 14th of April, 1870, *of the residue* of plaintiffs' leasehold interest in the premises, taking the property as it then was, before he had undertaken to build the wall or obtained permission to do so, assuming that under the lease the plaintiffs (the appellees) were then liable for and bound to make the repairs then necessary to be made—to which the appellees objected, and the Court sustained the same, and refused to permit the witness to answer, to which refusal the appellant excepted.

The object for which the proposed testimony was offered was not indicated by the appellant, and if it had any relevancy, it must have been as to the quantum of damages.

The appellant contends that the witness as an ordinary person, was competent to testify as to the value of the residue of the term ; but as an expert, he was entitled to give *his opinion* of its value, as an element in the estimation of damages.

The appellees deny that the value of the residue of the term entered at all into the consideration of the amount of loss which resulted from the destruction of their business ; that the witness possessed no peculiar qualification which authorized him to speak of the profits or losses which they would sustain from an interruption of their pursuits, and even if the witness was competent to speak of the subject-matter inquired of, the subject-matter of the question was not the test of damages.

The latter view of the question we think is the correct one.

The ground of action was the negligent or unskilful discharge of a commission which the appellant had un-·dertaken to perform.   The measure of damages was the loss sustained by the appellees in consequence of its non-performance through want of skill or care.

The value 'of the term, under pre-existing contracts and relations between the parties was irrelevant and immaterial to the issue.   The assumption of the appellant to secure and rebuild the wall, whatever might have been the obligations of the appellees in that respect under the lease previously, operated as a modification of the appellees' liability *pro tanto*, and the testimony offered by the appellant upon the presumption of their continuing liability, would have been, in our judgment, based upon an erroneous theory.   In a subsequent part of this opinion our reasons for this conclusion will be more fully developed.

The second bill of exceptions is taken to the refusal of the Court to allow the defendant to prove that House, the person who rebuilt the wall for defendant, had the character and reputation in Baltimore of being an experienced and skilful and reliable mechanic and master builder.

The testimony offered could only have been admitted upon the theory, that the defendant *was not responsible if the contractor employed by him to do the work was skilfnl.* But this position is untenable.

In the case of *Deford vs. The State, use of Keyser,* 30 *Md.*, 185, the defendant offered a prayer asserting this doctrine, but this Court, in their opinion, (p. 209,) referring to that prayer, say: "The tenth prayer was properly refused, because it proceeds upon the theory that the defendants were not responsible for the negligence of their agents and servants, if they were skilful and competent workmen, unless their negligence was committed in consequence of some special direction given or omitted

to be given by defendants." This can be maintained upon no principle applicable to this case.

The suit in this case differs from the case cited in that, it is not an action for damages resulting from an accidental injury, occurring in the course of work done by the employés of sub-contractors. But the action is for damages resulting from the malconstruction of the wall which the defendant had undertaken to build ; in which case the doctrine, *"qui facit per alium facet per se"* applies.

This Court, in the case of *Deford*, further said : "And the fact that the wall was erected by others under contract, and to whom he did not bear the relation of master, will not excuse him ; for, as was said by Lord CAMPBELL, in *Ellis vs. The Sheffield Gas Company*, 2 *E. & B.*, 767, it is a proposition absolutely untenable that in no case can a man be responsible for the act of a person with whom he has made a contract. If the contractor does the thing which he is employed to do the employer is responsible for that thing as if he did it himself." Numerous other authorities are cited establishing the same position, 30 *Md.*, 204, 205.

The appellees insist that the third bill of exceptions, in which the prayers of both plaintiffs and defendant and the action of the Court thereon are embodied, presents nothing which can be received in this appeal, except the refusal of the Court to grant the fourth prayer of the appellant as amended, and giving the instruction in lieu thereof.

It appears to us that such a construction of this bill of exceptions, would be very rigid and contracted, and inconsistent with its whole frame and object.

The third bill of exceptions, after a brief statement of some parol evidence, sets out in *"hæc verba,"* the plaintiffs' first and second prayers, and states the defendant offered the following seven prayers, which are inserted at

length ; it then states, "the Court granted the plaintiffs' first prayer with the following modification, (which is inserted,) and refused to grant their second prayer. Immediately after which follows this statement : "The Court granted the defendant's first and fifth prayers, (the fifth being conceded by plaintiffs,) and also granted his second prayer, after modifying it by striking out the word "gross" before the word "negligence," but refused to grant it as offered, and refused to grant the defendant's third, fourth, sixth and seventh prayers."

"To *which granting of plaintiffs' first prayer as modified* and *refusal* to grant defendant's *third, fourth, sixth and seventh, and his second* as offered, *the defendant excepted.* The defendant then again offered his fourth prayer, with the following addition (inserting the same) which the Court refused to grant, and gave the jury the following instruction, (inserting the same:)

"To which refusal to grant his fourth prayer, as amended, and to said last mentioned instruction, the defendant *also* excepted, and prayed the Court to sign and seal this bill of exceptions."

In our apprehension, the concluding paragraph embraced all the preceding exceptions, before noted, otherwise the introduction of all the prayers would have been superfluous.

Under this construction of the third bill of exceptions, the prayer of the plaintiffs, as modified by the Court and granted, and those of the defendant which were rejected or modified by the Court, will be subject to review.

The plaintiffs' first and defendant's second prayer, as originally framed, prescribed the degree of care or skill required by law of the defendant, in the construction of the wall, under the agreement of the 14th of April, 1870, to exonerate him from liability to the plaintiffs for damages resulting from its falling down.

As modified by the Court, the standard prescribed by the former, was " such ordinary care in the building of

said wall, as prudent men usually exercise in regard to their own property."

The defendant's prayer as framed, affirmed the plaintiffs are not entitled to recover, unless the defendant was guilty of gross negligence, and if the defendant and his agents, used "such ordinary care in the erection of said wall, as prudent men usually exercise in regard to their own property," the plaintiffs were not entitled to recover.

The second proposition of the defendant's prayer, is identical in sense, and almost in terms with that of the plaintiffs, as modified and given by the Court. The only change made in the defendant's prayer, was striking out the word "gross" before the word "negligence."

If the defendant's prayer had been presented with a single aspect, terminating with the word "negligence," its sense would have been materially altered by striking out the term "gross," but accompanied as it was, with a second proposition, as an equivalent to the first which was granted, the adoption of the latter, neutralized the modification of the former.

Gross negligence and ordinary care are correlative terms. Want of ordinary care is gross negligence, and *vice versa.*

That learned writer, Sir Wm. Jones, in his treatise on Bailment, thus defines the principle of the degree of care required of mandataries.

The essence of the contract of mandate is, the gratuitous performance of it by the bailee. *Jones on Bailments,* 52.

"The distinction between one sort of mandate and a deposit, is that the former lies in *fesance,* and the latter simply in *custody:* whence, as we have intimated, a difference often arises between the degrees of care demanded in the one contract and in the other; for the mandatary being considered as having engaged himself to use a degree of

diligence and attention, adequate to the performance of his undertaking, the omission of such diligence, may be according to the nature of the business, either ordinary or slight neglect; although a bailee of this species ought regularly to be answerable only for a violation of good faith. This is the common doctrine taken from the law of Ulpian : but there seems, in reality, to be no departure in the present case from the general rule; for since *good faith* itself obliges every man to perform his actual engagements, it of course obliges the mandatary to exert himself in proportion to the exigence of the affair in hand, and neither to do any thing, how minute soever, by which his employer may sustain damage, nor omit any thing, however inconsiderable, which the nature of the act requires ; nor will a want of ability to perform the contract, be any defence for the contracting party ; for though the law exacts no impossible things, yet it may justly require that every man should know his own strength, before he undertakes to do an act, and that, if he deludes another by false pretensions to skill, he shall be responsible for any injury, that may be occasioned by such delusion.'' *Ibid* , 53.

The standard of skill and care prescribed by the Court below, in its modifications of the prayers of the appellees and appellant, is conformable we think to the principle announced in the foregoing extract from Sir Wm. Jones, viz: that care which good faith required the appellant to exercise, according to the exigence of the affair in hand.

The third and sixth prayers of the defendant, substantially assert that the defendant is not liable for the negligence of his agents, if he used due caution and care in their selection. We have shown in commenting on the preceding exception, that this view is not sanctioned by the authorities. These prayers were therefore properly rejected

The fourth and last bill of exceptions raises the question of the right of the appellant's counsel, in reply to the plaintiffs' opening argument on the evidence to the jury, to discuss before the jury the liability of the plaintiffs to rebuild the wall under the covenants of the lease.

The appellees urge that such an argument was improper, because it sought to make the jury the tribunal to construe a written instrument ; and was in direct opposition to the instructions of the Court given upon that subject.

The only instruction in which the liabilities of the parties to the lease is defined, is in the appellant's first prayer, which declares that under the provisions of the lease, the defendant on the 14th April, 1870, prior to his alleged agreement with the plaintiffs, was under no obligation, to make such repairs or build any wall, or do any thing else for the repair or preservation of the property.

The appellant's counsel, according to the statement in the bill of exceptions, referred to the lease and contended that on the 14th of April, 1870, before the defendant had undertaken to build the wall or make repairs, the plaintiffs were bound for the repairs then necessary to be done and to rebuild the wall if necessary.

It was admitted on behalf of the appellees, (the plaintiffs,) that prior to the alleged agreement between Hill, as agent of the defendant and the plaintiffs, the latter were required by the lease to make *repairs*, but they objected to the counsel for the defendant, discussing before the jury or asserting as the law, that by the proper construction of the covenant to repair, the appellees would have been required at any time before the lease expired or afterwards, *to rebuild the wall*, if necessary to preserve the premises.

The Court sustained the objection of the appellees, "on the ground that the Court had given *no instruction* to the jury upon the point, nor had any instruction been asked by either plaintiffs or defendant in reference to that ques-

tion, and it was *too late at that stage* of the case, to raise the question under the 23rd rule of the Court."

It is clear from the reasons assigned by the Court for sustaining the objection, that the appellant's construction was not in direct opposition to the rulings of the Court. "No instructions on that point, having been asked for or given."

The rule of Court relating to instructions, purports that after all testimony intended to be produced by plaintiffs and defendant shall have been introduced, the Court will expect to be furnished with all the prayers which the parties respectively propose to found thereon, which shall be argued together. * * * * And the Court, upon the whole case, will give such instructions as may appear requisite to place the cause fully before the jury. After the jury shall have been so charged or instructed as contemplated by this rule, no additional prayer will be received, nor additional evidence given to the jury, *unless by permission of the Court.*"

There is nothing in this rule, which requires any or every written instrument given in evidence to the jury, to be first interpreted by the Court, before its legal effect can be commented on before the jury.

If the meaning of a written paper be disputed, it is the province of the Court, to construe it upon application by either party for that purpose, but until the Court has decided its true construction, each party has the right to put upon its language, such interpretation as the words employed will warrant. Nor is there any limitation upon the power of the Court, to construe instruments whilst the cause is being tried. It is most convenient to decide such questions in advance of the argument, but if they arise pending the discussion, the Court has the right to settle them by instructions before the jury retire.

The rule of Court incorporated in the record, reserves this right, and if it had not been expressly reserved, it is one of its necessary incidental powers.

We think therefore, the Court below erred in restraining the appellant's counsel, under the circumstances from arguing the legal effect of the lease.

If the construction of the instrument was disputed, they might at the instance of either party or *sua sponte.* have given such instruction as was necessary, to place the cause properly before the jury.

The appellant was not however, prejudiced by the error of the Court below in this respect.

Whatever may have been the obligations of the appellees under their covenant, "to keep said property in repair, " (which we do not deem it necessary to decide;) the appellant had voluntarily entered into a new engagement with the appellees, which discharged them from the performance of the duty of rebuilding the wall, by undertaking to do it himself.

"A covenantor cannot by any act of his own, short of performance, discharge or *in any manner qualify his express covenant, without the concurrence of the covenantee.* But any positive act of prevention by the covenantee, will release the covenantor ; e. g., "if a lessee for years, covenants to drain the water out of the land, or to build a house before such a day, and the lessor enters before the day, and holds the lessee out." *Taylor's Landlord and Tenant,* sec. 269.

It is immaterial how the concurrence of the covenantee is expressed, whether by acts of concession or acts of aggression, "*volenti non fit injuria.*"

The undertaking of the 14th of April, 1870, was inconsistent with the continuance of the covenant to repair as far as the rebuilding of the wall was concerned, and must be regarded as a waiver of all liability of the appellees on that account, by the appellant ; the subsequent actual execution of that agreement by the appellant, prevented the appellees, if they had so desired, from executing the work.

The case of *West vs. Blakeway*, 2 *Man. & Granger*, 729, seems to recognize this distinction. That was an action of covenant by the lessor, on a covenant to yield up at the expiration of the term all improvements, made during the term ; the breach alleged was the removal of a green house, erected during the term, which the termor pleaded, was erected under a parol agreement with the lessor, he should be at liberty to remove. C. J. TINDAL said,

"If the lessor had occasioned the breach, that would have been an answer to the complaint, founded on that breach ; not on the ground of an agreement, but because the act complained of, would have been the act of the lessor himself, and not as charged, the act of the lessee."

BOSANQUET, J., observed "No rule of law is more fully established than this, that a contract under seal cannot be varied by a parol contract. 1 agree if the covenantee prevent the performance of the covenant by an act of his own, his right of action for the breach of the covenant is destroyed. But the act to constitute such defence, must be the immediate act of the covenantee. Here an executory agreement entered into during the term, is attempted to be set up." In this case, the act relied on as a waiver, by the appellees, is the act of the appellant or his agents.

It is not set up as a plea to an action of covenant, on the covenant to repair, but proved as the ground of an action against the mandatary, for neglect in performance of a duty he had undertaken to execute with care and skill.

Finding no error in the rulings of the Court below by which the appellant was prejudiced, the judgment below is affirmed.

*Judgment affirmed.*

(Decided 18th February, 1874.)