HARDING, Respondent, vs. JESSE, Appellant.

*February 8—May 11, 1926.*

*Automobiles: Gratuitous guests: Acquiescence in negligence of host: Recovery in case of accident.*

A gratuitous guest riding in an automobile cannot sit idly by, observe clear violations of law, acquiesce in them, and then, in the event of an accident, hold his host liable, in ˈdamages; and although ordinarily cases of this nature present a jury issue (*Glick v. Baer*, 186 Wis. 268), the rule does not apply where repeated violations of speed are acquiesced in and no protest or remonstrance uttered.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Reversed.*

The plaintiff, *William Harding*, and his wife Bertha, sustained personal injuries in an automobile collision, and separate actions were brought to recover damages. The actions, however, were heard together upon the trial, and judgment having in each case been entered favorable to the plaintiff, the defendant has prosecuted two separate appeals, which were argued together and submitted on single briefs in this court.

The parties hereto and their families were long-time friends, and on or about August 5, 1924, plaintiff and his wife were invited by the defendant and his wife to join them in an automobile trip to Fish Trap Lake as their guests. Shortly before this trip was undertaken, the defendant, who had for a number of years driven a Ford car, with the operation of which he was familiar, purchased a new Essex coach, having a standard gear shift, and while he had driven the new car a distance of about one hundred miles, he had not yet become so accustomed to the change as to enable him to operate the new device with that mechanical ease and facility that comes with time and experience. On their way to the lake they stopped one night at Tomahawk and then

proceeded. While at Tomahawk and after arriving at the lake, the plaintiff and his wife discussed the trip, and remarks were passed that the defendant had carelessly driven his new car on several occasions, both as to speed in turning corners and in passing other vehicles. On the return trip from the lake the defendant, in attempting to stop his car at a railroad crossing, became aware that the brakes were loose, and that it required considerable bearing down on the same before they could be made to operate effectively, and both the plaintiff and his wife had knowledge of this defect.

State highway No. 10, for a distance of about five miles north of Wausau, is concreted, and between the hour of 12 o'clock noon and 12:30, when the beginning of this road was reached on the home-bound trip, defendant's wife requested him to drive faster, to enable the parties to reach Wausau in time for the noonday meal, and the evidence is undisputed that this request was complied with. The exact time of leaving the lake is not definitely fixed by the evidence, plaintiff having testified that it was about 8 o'clock in the morning, while his wife testified that it was between 7 and 8 o'clock, but that she was unable to state whether it was closer to 9 o'clock than 8 o'clock. The highway traveled from the lake to the concrete, a distance of about 110 miles, was not of uniform construction. In places it was smooth and afforded facilities for rapid travel, while in other places it was somewhat rough, which tended to impede and prevent rapid travel. Numerous highway crossings and vehicles were encountered, which required both the exercise of care in the operation of the car and a diminution of the speed. Upon his adverse examination before trial, the plaintiff testified that the entire stretch of about two miles, from the beginning of the concrete to the place of the accident, was traveled by the coach at a rate of speed of between forty and forty-five miles per hour. Upon the trial plaintiff's estimate of speed on the concrete was reduced to from thirty-five to forty miles per hour.

Some distance ahead of the defendant on the concrete, one Hintz, who was accompanied by his wife, operated a Chevrolet touring car in the direction of Wausau at the rate of between fifteen and twenty miles per hour, and when he arrived at a point about two miles south of the beginning of the concrete he observed Mrs. Wenzel, a pedestrian with whom he was acquainted, and he concluded to invite her to accompany him in his car to Wausau. He thereupon requested his wife to make an observation and inform him whether she could ascertain an approaching car from the rear, and Mrs. Hintz testified that in taking the view she could look backwards a distance of between two and three blocks and that the road was clear, and she so reported to her husband. He thereupon slackened the speed of his car, and after having passed Mrs. Wenzel took a look backward and observed defendant's car approaching at a distance of about forty to fifty feet in the rear, and almost simultaneously with this view defendant's car suddenly swerved to the left and collided with an oncoming Cadillac on defendant's left side of the road, which collision resulted in the injuries herein complained of.

Mrs. Wenzel also testified that while the speed of the Hintz car was being slackened, preparatory to stopping, she looked towards the north a distance of about a quarter of a mile and that she could see no car approaching at that time, and that by the time the Hintz car had passed her a distance of about twenty feet the collision occurred. While the plaintiff alone gave an estimate of the speed of defendant's car, all of the witnesses agree that it was operated at a high and rapid rate of speed. Mrs. Harding testified that while defendant's car upon the concrete was operated at a rapid rate of speed she did not feel alarmed, and she gave this as a reason why she did not remonstrate and protest the speed to the defendant, and she also testified that if her husband had been the operator she would have uttered a protest.

The jury returned a special verdict, in which it found (1) that the defendant failed to exercise ordinary care in operating his automobile at the time of the collision; (2) that such lack of care was a proximate cause of the collision; (3) that the plaintiff did not fail to use ordinary care for his own safety and thereby proximately contribute to his injury; and (4) that plaintiff's wife, Bertha, did not fail to use ordinary care for her own safety and thereby proximately contribute to her injury. The usual motions were made after verdict, and in both actions judgment was ordered and entered in plaintiff's favor for the amount found by the jury.

For the appellant there were briefs by *Minahan, Minahan & Duquaine* of Green Bay, and oral argument by *E. M. Duquaine*.

For the respondent there was a brief by *Brown, Pradt & Genrich* of Wausau, and oral argument by *L. A. Pradt, Jr.*

The following opinion was filed March 9, 1926:

DOERFLER, J. The learned circuit judge in his opinion states that the defendant's negligence may have consisted of too great speed, or too near approach to the Hintz car, or insufficient care to keep a lookout, or all of these things together. The jury found that he was negligent in the operation of his car at or immediately prior to the collision, and while it did not specify the ground of negligence, we are satisfied that he was negligent as to speed as a matter of law. This will more definitely appear from what is said hereafter.

Counsel for the defendant do not dispute their client's negligence in this respect; on the contrary, they admit the same; and in referring to negligence based on speed we have in mind a speed in excess of thirty miles per hour. We will therefore proceed to consider the contention of the defendant's counsel that both the plaintiff and his wife voluntarily

acquiesced in such speed without remonstrance, and that they were therefore guilty of negligence in participating in such speed, which, under the law of this state, bars recovery. *Glick v. Baer,* 186 Wis. 268, 201 N. W. 752; *Vogel v. Otto,* 182 Wis. 1, 195 N. W. 859; *Mitchell v. Raymond,* 181 Wis. 591, 195 N. W. 855; *Brubaker v. Iowa County,* 174 Wis. 574, 183 N. W. 690; *Howe v. Corey,* 172 Wis. 537, 179 N. W. 791.

That the defendant had not acquired adequate skill in the management of his Essex car, and that he was careless in his operation of the same, even on the trip to the lake, is shown by the testimony of both the plaintiff and his wife. They discussed this subject both at Tomahawk and at the lake. They were aware that the car was not in perfect order, in that the brakes were loose and did not operate properly for some considerable distance before the accident. The entire stretch from the lake to the beginning of the concrete was covered at a speed which averaged about twenty-five miles per hour. While it is possible to operate a car a distance of 110 miles at the uniform rate of twenty-five miles per hour, in view of the varying conditions of the road it is highly improbable that such uniform rate was maintained, and it is a reasonable inference, to say the least, that during numerous periods while traveling this distance the car was run at an illegal and excessive rate of speed,—one exceeding thirty miles per hour. It is undisputed that the parties were in a hurry and were anxious to arrive at Wausau in time for the noonday meal. It is admitted that when they reached the concrete, Mrs. Jesse, with the knowledge of both *Mr.* and Mrs. *Harding,* requested that the defendant drive faster. Before them lay this stretch of five miles of concrete road in fine condition. That they did drive faster and that they did exceed the speed limit, no one, under the circumstances, can doubt. In fact, the plaintiff upon his adverse examination admitted that over a stretch of two miles, from the be-

ginning of the concrete, the car was run at a rate of between forty and forty-five miles per hour. Upon the trial he modified this admission by placing the speed over this stretch at thirty-five to forty miles per hour. It is true that both *Mr.* and Mrs. *Harding* testified that on a number of occasions they overtook the Hintz car, and that the speed of the *Jesse* car was several times reduced. However, this testimony is of little probative force in view of the frank admission of the defendant that the entire distance of two miles, from the beginning of the concrete, was traveled at a rate of between thirty-five and forty-five miles per hour. Moreover, the parties were anxious to get home. They had a clear, wide road, and in view of their anxiety it is highly improbable, if not incredible, that they should slacken their speed for the Chevrolet car and not pass it, especially where the evidence shows that there was no other obstruction in the road.

All of the witnesses agree that the defendant's car was operated at a very rapid rate of speed. Mrs. Hintz testified that when she looked to the rear she could clearly see a distance of about three blocks, but that she discovered no car; that between the time when her husband slackened the speed of the car and the time of the accident but a comparatively few seconds elapsed. Mrs. Wenzel also testified that as the Hintz car approached her, and when she looked towards the rear, she had a clear view for a distance of about a quarter of a mile and that no car was seen approaching, and that during the period that the Hintz car passed her and ran a distance of twenty feet beyond her, the defendant's car appeared upon the scene, and almost contemporaneously with such appearance the collision took place. While both Mrs. Hintz and Mrs. Wenzel might have overestimated the distance that they could or did see to the rear, their testimony is of great probative force, and leaves but one logical conclusion, namely, that the defendant's car was approaching at a dangerous and illegal rate of speed, and by such illegal

rate of speed we have reference to a speed in excess of thirty miles per hour.

Notwithstanding the knowledge of the plaintiff and his wife of the inexperience and lack of skill of the defendant as a driver of the Essex car, and the violation of the speed limit on numerous occasions over a distance of 110 miles, and the knowledge which they had of the defective brakes, not a single protest or remonstrance was uttered until the Essex car had arrived at a point where a collision was imminent and unavoidable. That Mrs. Harding was fully aware of and appreciated the excessive rate of speed of the defendant's car is manifested by her frank admission that if her husband had been the driver she would have cautioned him.

We fully appreciate the delicate situation of a gratuitous guest when it comes to protesting or remonstrating to the host with respect to illegal speed or with respect to any other negligence in the operation of a car. However, the law in this state is now well established, as will appear from the foregoing decisions, that a gratuitous guest cannot idly sit by, observe clear violations of law, in fact acquiesce in them, and then, in the event of an accident, hold his host liable in damages. The privilege of a gratuitous ride is accompanied by a corresponding obligation, and such obligation must be met if liability should ensue.

We also are aware of the language used in the *Glick Case,* 186 Wis. 268, 201 N. W. 752, where it is stated that ordinarily cases of this kind present an issue for the jury. This rule, however, does not apply in a case like this, where repeated violations as to speed are acquiesced in and where no protest or remonstrance is uttered.

We therefore conclude that the learned circuit judge was in error when he submitted an issue as to speed to the jury and when he approved the verdict of the jury. This accident was primarily due to the operation of the Essex car

at a rate of speed in excess of thirty miles per hour. This excessive speed prevented a timely control of the car, and clearly was the reason why, in order to avoid a collision with the Hintz car, the Essex car was made to suddenly dart out from behind the Hintz car into the path of the oncoming Cadillac. Every other charge of negligence was intimately and inseparably connected with excessive speed.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions to dismiss plaintiff's complaint.

A motion for a rehearing was denied, with $25 costs, on May 11, 1926.

For the appellant there were briefs by *Minahan, Minahan & Duquaine* of Green Bay, and oral argument by *E. M. Duquaine.*

For the respondent there was a brief by *Brown, Pradt & Genrich* of Wausau, and oral argument by *L. A. Pradt, Jr.*