SOMMERFIELD, Administrator, Respondent, vs. FLURY and others, Appellants.

WESSEL (HENRY), Respondent, vs. FLURY and others, Appellants.

WESSEL (LESTER), Respondent, vs. FLURY and others, Appellants.

WIEGERT, Respondent, vs. FLURY and others, Appellants.

*January 11—February 5, 1929.*

For the appellants General Casualty Company and Earl
Krueger there was a brief by *Richmond, Jackman, Wilkie &*

*Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

For the appellant Flury there was a brief by *Williams & Foster,* attorneys, and *A. L. Simpson,* of counsel, all of Fond du Lac, and oral argument by *Fred A. Foster.*

*L. E. Lurvey* of Fond du Lac, for the respondent Sommerfield, administrator.

For the other respondents there was a brief by *Martin & Kelley* of Fond du Lac, and oral argument by *G. L. Kelley.*

OWEN, J. Appellants' first, and perhaps principal, contention is that the judgments should be reversed because all of the occupants of the Krueger car were engaged in a joint undertaking and Krueger was liable only for gross negligence. This contention is based on the fact, as the court found, that it was a custom of the neighborhood for every one to turn out to help when buildings caught fire. The burning building was insured in the local town mutual fire insurance company, as was property of some others who went to the fire to help; that Krueger did not invite any of the occupants of the car to ride with him nor did they ask permission to ride. The argument is that the neighborhood custom devolved upon each of the occupants of the car the duty to rush to a fire, and that they were riding in the car for the purpose of discharging a duty common to all of them.

The ordinary conception of a joint undertaking is that it grows out of a financial or business enterprise, and springs from contract. It is much like a partnership, the principal difference being that a joint undertaking is confined to a single enterprise rather than to a continuous business relation. Our attention has been called to a few scattering cases where courts have considered relations purely social in their nature as giving rise to a joint undertaking. We believe such conclusions were reached without giving due consideration to the true character of a joint enterprise, as the same is

known in the law. We have said in *Krause v. Hall,* 195 Wis. 565, 217 N. W. 290, that the relations of joint adventurers do not arise out of social relations. We are still of that opinion.

The trip of the Krueger car involved nothing of a joint financial interest to its occupants. Neither did it involve the performance of a joint duty. The duty devolving upon each of the occupants of the car, according to the neighborhood custom, was several and not joint. It was individual and not common. Each grasped the most convenient means at hand to enable him to reach the fire in order to discharge his neighborhood duty. There was no more of a financial or joint interest involved than if they were going to the polls to vote. Nothing in the nature of a mutual agency existed between them, which is characteristic of the relation of joint adventurers, just the same as of partners. It seems plain that the occupants of the car were not engaged in a joint enterprise, and that the relation of joint adventurers did not exist between them.

It is earnestly contended that if they were not co-adventurers, the conventional relation of host and guest did not exist between the occupants of the car and Krueger, and that it should be held that some other relation than that of host and guest existed between them. Attorneys for appellants concede that where one starting on an automobile trip invites another to accompany him for the sake of company and companionship, the conventional relation of host and guest is established. They maintain, however, that a different relation exists where, for the purposes of illustration, a group of delegates desire to attend a convention in the affairs of which each entertains a certain and perhaps similar interest; this group get together and discuss the means of conveyance by which they shall reach the convention, and, as a result of their deliberations, one agrees to drive his car for the purpose of transporting them all to such conven-

tion,—it is said that under such circumstances a different relation is established than that where one merely invites another to accompany him on an automobile trip, and that the driver of an automobile should be held to a less degree of care where the trip is for the benefit and by the agreement of all than where it is pursuant to the express invitation of the driver of the car. In other words, it is urged that there should be a classification of the relation of host and guest so that the duty which devolves upon the driver of the car where the conventional relation of host and guest exists should be minimized where the trip is pursuant to an agreement, express or implied, and for the common benefit of all. It is apparent that compliance with this suggestion would multiply issues in automobile cases and introduce further confusion into the administration of the law. Compliance with the suggestion should be made with hesitation unless the present rule appears to be unduly harsh upon the driver of the automobile and unless the interests of justice require the working out of some sort of a classification along the lines suggested.

Under our present rule, the duty which a host owes to his guest, or which the driver of a car owes to its occupants, is that of licensor and licensee. This calls for the slightest degree of care in any human relation, except that in the case of trespasser, or those relations where no liability arises except for gross negligence. The duty so devolving upon the driver of the car is said to be not to increase the danger or to add a new one. Obviously the danger which he is under obligation not to increase is the danger which may be anticipated upon entering the car. One so entering the car takes it with the defects not known to the host. *O'Shea v. Lavoy,* 175 Wis. 456, 185 N. W. 525. He also assumes the dangers incident to the known incompetency or inexperience of the driver. *Cleary v. Eckart,* 191 Wis. 114, 210 N. W. 267. He also assumes the dangers incident to the known

habits of the driver. *Olson v. Hermansen,* 196 Wis. 614, 220 N. W. 203. He is also bound by his acquiescence in the speed maintained or other respects in which the car is handled. *Harding v. Jesse,* 189 Wis. 652, 207 N. W. 706. Furthermore, he is bound to exercise due care for his own safety in the matter of maintaining a lookout. *Howe v. Corey,* 172 Wis. 537, 179 N. W. 791; *Glick v. Baer,* 186 Wis. 268, 201 N. W. 752.

This is the duty which the driver of a car owes to its occupants under our present decisions. Should we adopt any rule which will impose a less degree of care upon the driver of a car under any circumstances? Notwithstanding the automobile has won the judicial encomium of being a harmless instrumentality, the fact remains that its toll of life and limb far exceeds that of any other human agency. An automobile moving at an ordinary speed requires the constant attention of the driver if it is not to become a menace to the safety of its occupants as well as pedestrians. The locomotive engineer may contemplate the landscape with comparative assurance that his train will not run into the ditch, but the driver of an automobile may take but momentary glances at his surroundings if he would keep his car upon the highway and preserve the security of its occupants. The dangers incident upon the inattention of the driver of an automobile are very great. Inattention to his driving for a fraction of a second may plunge the car into the ditch, bringing death or serious injury to the occupants. Where one assumes a position of such responsibility, the degree of care which one owes to those whose safety depends upon his attention should not be treated too lightly. Ordinary care is a relative term. It depends in no small degree upon the given situation. Where the danger resulting from inadvertence is great, the care known as ordinary care calls for a greater degree of care than where the danger resulting from inadvertence is slight. We are not persuaded that jus-

tice requires that the degree of care which our decisions impose upon automobile drivers towards the occupants of the car should be relaxed in any appreciable degree, if at all, no matter what circumstances account for the presence of the occupants of the car who are there with the knowledge and consent of the driver. No matter whether he is a co-adventurer or a gratuitous agent, the driver owes to the occupants of the car some degree of care for their safety, and that degree of care should not be much less under any circumstances than that required by our present decisions. We do not think the interests of justice cry so loudly for a classification of the relation of host and guest with reference to the drivers and occupants of automobiles, establishing, as it were, a new degree of care difficult of definition and hard of administration, to justify the confusion to which it would lead. We therefore proceed with the further consideration of the case upon the theory that the relation of Krueger to the occupants of the car was the conventional relation of host and guest.

While the appellants' contentions so far discussed are not sustained, it is plain that there must be a new trial for the erroneous and inadequate manner in which the case was submitted to the jury. Apparently the trial court did not appreciate the difference between the duty which Krueger owed to other users of the highway and the duty which he owed to the occupants of the car. The verdict as submitted inquired only with reference to such matters as constituted negligence on the part of Krueger to third persons using the highway. The verdict did not adequately ascertain whether Krueger had breached the duty which he owed to the occupants of the car. It was conceded by plaintiffs that it was customary in that neighborhood to hurry to fires. This would justify a conclusion on the part of the jury that the occupants of the car knew or had reason to believe that

Krueger would not drive as carefully as ordinarily on the trip. Among other risks assumed by the occupants of the car were the risks naturally incident to the purpose and character of the trip. If the purpose and character of the trip, under the custom with which they were all familiar, called for haste, it must also dispense with a certain degree of care ordinarily exercised on trips calling for a less degree of haste. Whether the occupants of the car should anticipate that by reason of the purpose and character of the trip some accident would be sustained, was at least a jury question. If they should have so anticipated, then they assumed the risk as a matter of law. Nor was it necessary that they should anticipate the happening of this particular accident. It was only necessary, under well established rules of law, that they should have anticipated some accident. A question calculated to elicit a response from the jury upon this proposition should have been submitted.

The court told the jury that the fact that they were going to a fire could not affect the situation at all; that Krueger had no right to drive faster because he was going to a fire than he had if he was going on another errand. This would have been true so far as other users of the highway were concerned, but it was not necessarily true with reference to the occupants of the car if it was their common desire to hurry to the fire. So far as they were concerned, Krueger incurred no liability to them in driving at any rate of speed in which they might acquiesce.

The question with reference to contributory negligence is especially disapproved. In each case the defendants requested that the following question be submitted, the name only being changed in each case: "Did any want of ordinary care on the part of Otto Wiegert proximately contribute to his injury?" The court refused to submit this question, but submitted the following: "Ought the plaintiff, Mr. Wiegert,

as an ordinarily intelligent and prudent person, reasonably to have foreseen from the circumstances that the manner in which Mr. Krueger was driving as he approached the intersection might probably cause or contribute to do him some injury?" The question did not ask as to whether Mr. Wiegert in any respect failed to exercise ordinary care. It did not cover the question of Wiegert's own lookout, and whether he should have apprehended danger from his own failure to keep such lookout. This court recently condemned a similar question in *U. S. F. & G. Co. v. Verbergt,* 197 Wis. 542, 222 N. W. 799, rendering further comment at this time unnecessary. Enough has been said to indicate that the cases should be submitted to the jury in a manner to establish the liability of defendants upon the theory that the relation existing between Krueger and the occupants of the car was that of host and guests, and that the liability of Krueger is to be tested by the principles of law herein stated. Because the cases were not so submitted, the judgments must be reversed as to Krueger. While the finding of negligence as to Flury is well sustained, the verdict as submitted did not adequately cover the question of the contributory negligence of the plaintiffs, for which reason the judgments as to him must also be reversed.

*By the Court.*—Judgments reversed, and causes remanded for new trial.