# LEA M. WARNER *v.* FRANK MARKOE
## [No. 44, October Term, 1936.]

352

*Decided January 14th, 1937.*

354

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*George Weems Williams* and *Jesse Slingluff, Jr.*, for the appellant.

*Joseph T. Parr*, with whom were *Rome & Rome* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The owner of an automobile, appealing from a judgment for damages sustained by his guest in the car from collision with another car at a street crossing, contends that there was error in the trial court's refusal to direct a verdict in his favor, and if not, then in refusal of an instruction on a possible finding by the jury that negligence on the part of the other car, coming from the left, was the sole cause of the collision.

On a Sunday afternoon, January 6th, 1935, the plaintiff and the defendant embarked on a tour of drinking places, starting at the residence of the plaintiff at Riderwood, in Baltimore County, where they had wine. Thence they rode in Warner's car, driven by a colored boy employed by him, to a hotel at Towson, where they drank whisky and beer. They next drove to a tavern on North Charles Street in Baltimore City, and the plaintiff had more whiskey and beer. There they met another party of five, two young women and three young men, and the combined parties, of seven in all, rode in Warner's car, still driven by the colored boy, to a night club on South High Street, about two and a half blocks south of Pratt Street, arriving at the club at about 9 o'clock. The plaintiff testified that he thought he might be the

one who told the driver to go to the club, as the group had decided, that either he or Mr. Warner told him. More drinking followed. The plaintiff's estimate of the number of his drinks from the beginning at Riderwood was eight or nine in all, and he added that he was not drunk, but that he would not have driven his own car if he had had it there. The driver, who had no drinks, testified that all his passengers were drunk. From the club, the plaintiff expected, as he said, to be driven back to the Charles Street place to let off the second group, and then either to be driven or to take a train to his home.

The plaintiff also testified that in the afternoon, while driving into the city, the driver had run at a high rate of speed, far over the speed limit, and was ordered by the defendant to "Slow up," to which the plaintiff added, "Yes, I don't want to get killed in an automobile." It is not clear that any of the testimony refers to the rate at which they subsequently drove to the night club. After an interrupting question on that fact, the plaintiff said the driver slowed up when he, the plaintiff, told him, but it seems that this may have been a continuation of his testimony on the speed coming into the city from Towson.

At the club the plaintiff remarked to one of the second party who had joined them, that "they had been out all day, and the chauffeur wanted to get home, and he had words with Mr. Warner to that effect"; and later, in the car, the plaintiff and the defendant talked of means of the defendant's getting money to pay the driver, who was hurrying because he had been kept out all day, "that is why he was hurrying."

Leaving the club, the occupants of the car took seats as they had been sitting when coming from the Charles Street place, the plaintiff sitting on the defendant's lap on the right of the front seat, with another young man beween them and the driver, and the remaining four on the back seat. According to the plaintiff's evidence, the car started north with a jerk, and ran to Pratt Street, increasing its speed to a rate estimated by one witness

as high as fifty or sixty miles an hour, never stopping for an intersection. And this evidence of excessive speed is the ground of the charge of negligence causing the injuries. It was testified that one of the passengers asked the driver not to go so fast. The driver contradicted the testimony that he was driving at a fast rate, or was in a hurry, or that he was cautioned at any time. The plaintiff made no remonstrance during the ride of two blocks and more north, and heard no remonstrance from others. He was, as he said, engaged in conversation with the defendant on the need of money to pay the driver, and on the driver's hurry to get home.

While crossing Pratt Street the car was struck on the left rear by another car coming from the left on Pratt Street, turned over, and came to rest in the neighborhood of forty feet beyond Pratt Street on High Street; and this caused the injuries to the plaintiff. There is no testimony on the movements of the other car except that of the defendant's driver, who said it was about fifty feet to the left on Pratt Street when the defendant's car started to cross, and that it struck the defendant's car on the left rear of it with such force as to knock him, the driver, off his seat. None of the passengers saw the car from the left, and the driver of that car did not testify.

The argument that there was a lack of evidence legally sufficient to support a finding of negligence in the driver of Warner's car, causing the injuries, supposes, as it must on the evidence, that the jury might find the car was driven at the excessive speed of sixty miles an hour. The contention is that nevertheless the proximate, legal cause of the collision must have been the invasion by the driver of the other car of the right of way of the defendant, which was an independent intervening act that Warner's driver was not required to anticipate, and except for which his driving would have resulted in no harm. In *Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194, and *Monumental Motor Tours v. Becker,* 165 Md. 32, 166 A. 434, in which invasion of the right of way was

held as matter of law to have been the proximate cause of collisions at crossings, the traffic was governed by signal lights definitely appropriating the crossings to the defendants' drivers for the time being, and excluding drivers from the left or the right. In this case there is no mention of signal lights or other governing signals, the case appearing to have been tried on the assumption —as, indeed, the defendant contends—that control was left under the rule that a driver shall yield the right of way to another driver coming from the right. Code, art. 56, sec. 209, as amended by Laws 1929, c. 224. "There is no testimony that at the time and the place of the accident traffic was either controlled by traffic officers or signal devices or that either public highway had been designated as a main-traveled or through highway, so the general rule applicable, under ordinary circumstances, was that all vehicles shall have the right of way over other vehicles approaching at intersecting public roads from the left." *Billotti v. Saval*, 165 Md. 563, 565, 168 A. 890. It is a rule that applies only in appropriate circumstances, that is, when the two drivers come to the crossing in such proximity in point of time as to require accommodation of one to the other. *Jersey Ice Cream Co. v. Bach*, 161 Md. 285, 292, 157 A. 277; *Minch v. Hilkowitz*, 162 Md. 649, 656, 161 A. 164; *Paolini v. Western Mill & Lumber Corp.*, 165 Md. 45, 52, 166 A. 609. Determination of the right of way, thus left to the drivers, in each instance, commonly involves the exercise of some judgment, the driver from the left being required to yield to avoid apparent chances of collision; and the fact should to some extent influence the driving of the car from the right. For one coming from the left may expect to have cars from the right approach under control, in compliance with section 209 of article 56 of the Code, as amended, and taking care to avoid traffic from its own right as well as traffic from the left which might be ahead of it at the crossing; and the driving from the left is likely to be governed accordingly. But one which comes from the right at such a speed as sixty miles an

hour, in disregard of other traffic, creates a different situation, adding a difficulty and hazard which the driver cannot trust the ordinary accommodation at crossings to render safe for his passengers. Surprise and miscalculation on the part of other cars, and aggravation of the results of a collision, should one occur, would be a new contribution of his, for which there should be a liability if it should cause a collision. Negligence in the driving from the left would not alter this conclusion, and constitute an intervening cause superseding that in the excessive speed. There may be a concurrence of negligent acts for which both of two independent tortfeasors would be liable. And a driver exercising care for his passengers must recognize, as a fact of common knowledge, and for which some degree of care must be taken, that at crossings to be dealt with by drivers themselves under the law, those from the left will often cross negligently, taking chances on avoiding collision, or negligently miscalculating the chances. *United Railways v. State*, 163 Md. 313, 325, 163 A. 90; *United Railways v. Crain*, 123 Md. 332, 342, 91 A. 405; *Lange v. Affleck*, 160 Md. 695, 155 A. 150; *Pennsylvania Steel Co. v. Wilkinson*, 107 Md. 574, 581, 69 A. 412; 72 Univ. of Pa. Law Review, 211, 343; *Torts, Restatement,* sec. 449. The court is of opinion in this case that there is support in the evidence for a finding of aggravation of the results to passengers from a possible collision, whatever might be the finding on causing the collision itself.

It is not the opinion of the court that the plaintiff could be held as matter of law to have been engaged in a joint adventure with the defendant on their drinking cruise, with the result that in contemplation of law the acts of the driver were the plaintiff's own acts. It is true there was a common purpose in seeking the pleasure of the two; and once, perhaps twice, the plaintiff repeated a warning given the driver to reduce his speed, and may have told the driver to go to the night club. But he had no part in engaging the driver, and there is no testimony, on the contrary, only a denial, that he had undertaken

or intended to join in paying the driver. And there is nothing to show that the driver was in fact under his control. The common purpose is not enough. The occasional directions to the driver are not enough. In a case in which a guest in a car was much more active in initiating the trip and in directing the driver, this court said: "That Chairs requested the bailee [of a borrowed car] to drive him, first, to the shopping district, and then to Williamsport, and pointed out the direction, and indicated the dangers to be encountered to a chauffeur, who did not know the way, in no legal manner made the two joint adventurers in a common enterprise. The guest was riding at the pleasure of the driver, who was under no obligation or duty to obey the directions of Chairs with respect to where the driver should take or return the automobile or in what manner it should be used and operated. In no true sense can it be said that they had joint or common possession and control of the automobile." *State v. Norfolk & Western Ry. Co.*, 151 Md. 679, 688, 135 A. 827, 831; and see authorities collected in 48 *A. L. R.* 1077, 63 *A. L. R.* 921, 80 *A. L. R.* 312, and 95 *A. L. R.* 857; *Torts, Restatement*, sec. 491.

There would be legally sufficient evidence to support a finding of contributory negligence, or assumption of the risk of injury by the plaintiff, in the recited evidence of his previous experience with this driver, and his continuing in the car without comment at the high rate of speed of which he complains, but it is not found sufficient to have required the direction of a verdict for the defendant on that ground. It is questionable whether it is, strictly speaking, contributory negligence that is referred to in the main part of this argument. The distinction between contributory negligence and voluntary assumption of risk is often difficult to draw in concrete cases, and under the law of this state usually without importance, but it may be well to keep it in mind. Contributory negligence, of course, means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntary

incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs. /Volenti non fit injuria. Bowen, L. J. in *Thomas v. Quartermaine*, L. R. 18 Q. B. D. 685, 694, 697; *Woodley v. Metrop. Dist. Ry. Co.*, 2 Ex. Div. 384; *McGeever v. O'Byrne*, 203 Ala. 266, 82 So. 508; *Harding v. Jesse*, 189 Wis. 652, 207 N. W. 706; *Knipfer v. Shaw*, 210 Wis. 617, 246 N. W. 328, 247 N. W. 320; *Hill v. Phila. R. T. Co.*, 271 Pa. 232, 236, 114 A. 634; *Shifflett's Admx. v. Virginia R. & P. Co.*, 136 Va. 72, 116 S. E. 500; 78 Univ. of Pa. Law. Rev. 737; *McHenry v. Marr*, 39 Md. 510, 533; *Arnd v. Amling*, 53 Md. 192, 199.

The incidents recited, that of the fast driving coming into the city from Towson, and the hurry of the driver to get home, while they might be considered as warnings, would not be sufficient, in the opinion of this court, to require a finding as matter of law that the driver was characteristically reckless in regard to his speed, so that, merely by embarking on the last ride with him, the plaintiff would be assuming voluntarily the risk of excessive speed at the time of the accident. And riding without complaint during the few seconds when the car was going at the dangerous rate toward the place of collision, if the jury believed it was so going, would not support a conclusion as matter of law that the plaintiff, in time to remedy the condition, realized the danger and acquiesced in incurring it. There seems to the court to be a question of fact left open by the evidence on the point. *State v. Lupton*, 163 Md. 180, 191, 161 A. 393; *Baltimore, C. & A. R. Co. v. Turner*, 152 Md. 216, 229, 136 A. 609; *Kent County v. Pardee*, 151 Md. 68, 75, 134 A. 33; *Pearson v. Lakin* 147 Md. 1, 5, 127 A. 387; 78 Univ. of Pa. Law Rev. 736 to 752.

Considering the possibility of what may be regarded strictly as contributory negligence, in failing to see and

warn of the car coming from the left, it seems that the jury might be permitted to find this consistent with due care under the circumstances, as the time for action was necessarily very brief, and the plaintiff might be found to have had his attention diverted without negligence.

This court therefore concurs in the rulings of the trial court on the sufficiency of evidence to support a finding of liability on the defendant. But prejudicial error is found in the court's refusal of an instruction to the jury, prayed by the defendant, that if they should find that the failure of the driver from the left to yield the right of way at this crossing of public highways was the sole, direct, and proximate cause of the collision, and that Warner's driver was driving with due care, the verdict of the jury must be for Warner. The trial court, in explanation of its ruling, said that while the instruction prayed would be proper in form, there was, perhaps by oversight, an omission of necessary evidence as to light control at the crossing and the public character of the streets. This court's conclusion that the crossing could not be found to have been one controlled by light signals has already been stated. And that the streets were public highways is one of the allegations of the declaration, dispensing with proof of the fact by the defendant.

The trial court also ruled that there was no evidence legally sufficient to prove any casual negligence on the part of the driver from the left, Sullivan, who was sued, but in whose favor a verdict was directed. But the evidence of Warner's driver would have permitted the jury to find that the latter was not driving at a dangerous rate of speed, threatening a collision with any other car, that when it arrived at the crossing Sullivan was fifty feet to the left of it, and that Sullivan, although required to yield the right of way, not only did not do so, but came forward and hit the left rear with such force as to knock Warner's driver off his seat, upset the car, and throw it forty feet to the northeast. A finding of negligence on Sullivan's part, operating as the sole cause of the collision and injuries, would have had sup-

362

port in this evidence. On behalf of the plaintiff, it has been contended that the instruction prayed was objectionable because it improperly segregated facts to support the verdict sought, but we have not been able to agree. The general facts proposed for the jury's finding would require a verdict irrespective of any other facts. There are no questions which would not be disposed of by those findings. 2 *Poe, Pl. & Pr.* sec. 301; *Hendler Creamery Co. v. Friedman,* 160 Md. 526, 531, 154 A. 93; *Hopper, McGaw & Co. v. Kelly,* 145 Md. 161, 168, 125 A. 779.

*Judgment reversed, and a new trial awarded, with costs.*