PAUL E. POWERS ET AL. *v.* STATE, USE OF ANNA C. REYNOLDS ET AL.

[No. 12, January Term, 1940.]

24

*Decided March 31st, 1940.*

The cause was argued before BOND, C. J., OFFUTT, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Robert H. McCauley*, for the appellants.

*William P. Lane, Jr.*, with whom was *Edward J. Ryan* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

The appeal is from a judgment entered on the verdict of a jury in the Circuit Court for Washington County, allowing damages for the death of Mary M. Reynolds as a result of an accident which occurred while she was riding in an automobile owned by Paul E. Powers, and driven by Raymond H. Coffman.

On November 11th, 1938, Coffman motored with his wife and Miss Reynolds from Cumberland to Hancock, where they invited Powers to accompany them on a trip to Hagerstown. Powers agreed to drive his new La Salle sedan, and they left Hancock about 8:30 P. M. After reaching Hagerstown, they drove to a night club, arriving there about 9:30 P. M. During the evening Coffman had three drinks of "Tom Collins." The others in the party drank more than he did. When they left the club after midnight, Powers was not in a fit condition to drive, so he entered the back seat with Miss Reynolds while Coffman took the wheel. In Hagerstown they had some food at a restaurant. They then started on the way back to Hancock. While taking a curve on the east side of Fairview Mountain about 1:30 A. M., the car swerved from the road, knocked down three posts in the guard rail, and went a distance of 48 feet, 7 inches up the road. Miss Reynolds was thrown out of the car and killed by the accident.

The appellants prayed for a directed verdict because of lack of legally sufficient evidence. At the trial of the case at bar, a Connecticut motorist testified that he observed the car, about 50 seconds before the accident, traveling at a speed of about 70 miles an hour. Coffman admitted that his speed had reached 60 miles an hour, but claimed that on reaching the mountain he slowed down to between 45 and 50 miles an hour. The jury is not required to believe that the witness for either side are accurate in their testimony regarding the speed or the manner of operation of a motor vehicle. The testimony as to the speed, the impact against the guard rail, and other facts, justified the trial court in submitting the case to the jury. In order to justify a directed verdict, the evidence should admit of no inference of negligence in the operation of the automobile. *Ottenheimer v. Molohan*, 146 Md. 175, 126 A. 97; *Bozman v. State*, 177 Md. 151, 9 A. 2nd 60.

Powers sought a directed verdict on the ground that there was no evidence to show that Coffman was operating the automobile on his behalf. It is well established that the owner of an automobile, who is riding in it while driven by another, is not relieved of responsibility because he is not personally at the wheel, when he tacitly assents to the manner in which it is driven. At the trial of this case, Powers testified that he put his key in the switch of the car, and assented to a suggestion that Coffman be allowed to drive. There is no question that Coffman was operating the car on behalf of Powers. If the owner of a car either requests or allows another person to drive while he is occupying it, his request of permission will not of itself exclude his right of control. The owner has the right and the duty to prevent, if possible, the driver from operating the machine in a reckless and dangerous manner. If the car is negligently operated, it is presumed that the owner consented to the negligence. Therefore, in the absence of proof that he abandoned the right of control, he is liable for any damage resulting from the negligence of the driver. *Randolph v. Hunt,*

41 Cal. App. 739, 183 P. 358; *Harris v. Boling,* 132 Okl. 17, 269 P. 274; *Rodgers v. Saxton,* 305 Pa. 479, 158 A. 166; 5 *Berry, Law of Automobiles,* 193; 5-6 *Huddy, Automobile Law,* sec. 749.

The contention was made that the parties were engaged in a joint enterprise, and therefore the negligence of the driver should be imputed to the other occupants of the car. Joint adventure or enterprise is an association of two or more persons intended to carry out a single transaction for profit. *Dolan v. Dolan,* 107 Conn. 342, 140 A. 745; 63 *A. L. R.* 913. At common law this relationship was not recognized unless the elements of a formal partnership existed, but in the passage of time a modification of this rule developed in American judicial decisions by the recognition of joint enterprise as a limited partnership. Joint enterprise as a legal concept is not a status created by law; it is a contractual relationship of mutual agency. *Krause v. Hall,* 195 Wis. 565, 217 N. W. 290. In order to impute the negligence of a driver of a motor vehicle to another occupant, in an action brought against a third party alleged to have been negligent, it must be shown that the relationship of the parties was that of partners, or principal and agent, or master and servant. *Potter v. Florida Motor Lines,* D. C. 57 Fed. 2nd 313. The question whether occupants of an automobile were engaged in a joint enterprise is often a question for the jury. *Link v. Miller,* 133 Kan. 469, 300 P. 1105. It is generally held that the common purpose of riding together for pleasure is insufficient to establish a joint enterprise. Although the purpose of a pleasure journey is a common one, the courts usually hold that such a purpose is not sufficiently joint to have the effect of imputing the negligence of the driver to the others, unless the parties had entered into an actual or implied contract giving common possession of the vehicle and joint control of its operation. *Claxton v. Claxton,* 16 Tenn. App. 399, 64 S. W. 2nd 854; *Rogers v. Goodrich,* 131 Cal. App. 245, 21 P. 2nd 122; *Miles v. Rose,* 162 Va. 572, 175 S. E. 230; *Bailey v. Parker,* 34

Ohio App. 207, 170 N. E. 607; *Archer v. Chicago, M. St. P. & P. R. Co.*, 215 Wis. 509, 255 N. W. 67. So, where a group of boys agreed to share equally the expenses of a pleasure trip, and each had the right to be heard in carrying out its details and an equal right to direct the speed and the movements of the car, the court held that they were engaged in a joint adventure. *Frisorger v. Shepse*, 251 Mich. 121, 230 N. W. 926. If there is no prearrangement for a substantial sharing of the expenses of a pleasure trip, it is the general rule that the trip is not a joint enterprise, even though the parties have a common destination and a common purpose, and even though the guest drives alternately with his host. But if the parties do not own or hire the car jointly, even the fact that they share the expenses of a trip does not of itself make their trip a joint enterprise. *Am. L. Inst., 2 Restatement, Law of Torts*, sec. 491.

In Maryland a sharing of losses as well as of profits is an essential test in determining whether there has been a joint adventure. *Atlas Realty Co. v. Galt*, 153 Md. 586, 139 A. 285. We have held that a driver and a guest were not joint adventurers merely because the guest requested the driver to take him to certain places, gave certain directions, and indicated dangers on the way. *State v. Norfolk & Western Ry. Co.*, 151 Md. 679, 135 A. 827. And in a case in this state wherein an automobile owner was returning with five friends from a pleasure trip, during which an accident occurred, this court declared that the parties had not embarked upon a joint adventure equally beneficial to all of them. *Vacek v. State*, 155 Md. 400, 142 A. 491. In a later Maryland case, wherein the plaintiff and the defendant had been riding in the defendant's automobile on a trip to drinking places in the common purpose of seeking pleasure, the court declared that, even though the plaintiff had given directions to the chauffeur, the facts were not enough to establish the relationship of joint enterprise. *Warner v. Markoe*, 171 Md. 351, 189 A. 260. We conclude therefore, that the parties in the present case were not joint

adventurers. But even if they were, the doctrine of imputed negligence could not be invoked in this case; for, according to many authorities, the doctrine of imputed negligence does not apply to an action between joint adventurers. 5-6 *Huddy Automobiles*, sec. 149, page 291; 2 *Restatement Law of Torts*, sec. 491, page 1274. The general rule is that where the occupants of a vehicle are engaged in a joint enterprise, the negligence of one member of the enterprise will be imputed to another when the action is brought against a third party; but the rule does not apply when one member of the enterprise brings the action against another member who owns or operates the vehicle, for the doctrine of imputed negligence is inapplicable as between the parties. *Bates v. Tirk*, 177 Wash. 286, 31 P. 2nd 525; *Adams v. Hilton*, 270 Ky. 818, 110 S. W. 2nd 1088. In a case in Arizona the court allowed one joy rider to recover from another on the theory that the common will directed their movements, and the joy riders were virtually joint adventurers. *Franco v. Vakares*, 35 Ariz. 309, 277 P. 812. But joy riders, when considered in an exceptional case such as that in Arizona, are defined as two or more persons who drive "at a dangerously high rate of speed merely for the purpose of enjoying the exhilarating and pleasurable sensations incident to the swirl and dash of rapid transit" and thereby assume "the risks of danger attendant upon the sudden and violent movements of the car." *Winston's Admr. v. City of Henderson*, 179 Ky. 220, 200 S. W. 330, 332. And inasmuch as Powers was asleep and Mrs Coffman was "dozing off" before the accident, the parties can not be classified as joy riders as defined by the courts.

It was further contended that Miss Reynolds was guilty of contributory negligence because of a voluntary assumption of risk. The test in determining voluntary assumption of risk is whether there was an intentional and unreasonable exposure to danger, which the plaintiff either knew or had reason to know. A guest is not negligent in riding with an intoxicated driver, if he is

unware of the intoxicaion or does not notice any facts which would arouse the suspicious of a person of ordinary prudence. 5-6 *Huddy Law of Automobiles*, sec. 143. Likewise, the duty to protest against excessive speed is not absolute, but depends upon the circumstances of the case. The law does not impose a duty upon a guest in an automobile to remonstrate, in the absence of facts suggesting a necessity to watch the speed. A guest, who is unaware of the speed and its perils, cannot be held to the same degree of responsibility cast upon the driver. *Higgins v. Metzger*, 101 Vt. 285, 143 A. 394; 5-6 *Huddy Law of Automobiles*, sec. 144. We have held in Maryland, in an action for the death of one who was riding in another's car, that the fact that the deceased failed to protest against the alleged negligence of the owner in the operation of the car did not of itself constitute contributory negligence as a matter of law. *Baltimore v. State*, 146 Md. 440, 126 A. 130. If a driver's unfitness is not discovered until after the car is on a lonely road in a part of the country with which the plaintiff is unfamiliar, particularly if late at night, it may be the part of prudence to remain in the car, unless the driver is so incompetent or reckless that a reasonable man would recognize that there was a great likelihood of an accident. 2 *Restatement, Law of Torts, secs.* 1231, 1234. It has been repeatedly held that a guest is not contributorily negligent as a matter of law in riding in an automobile, after he and the driver have been drinking together. So, on the issue of a guest's contributory negligence in riding with an intoxicated driver, such questions as the amount of intoxicating liquor the driver had consumed, the extent of the driver's intoxication, and how much the guest was aware of it, are usually questions for the jury in determining whether there was an assumption of risk. *Erickson v. Vogt*, 27 Cal. App. 2nd 77, 80 P. 2nd 533; 5 *Berry Automobiles*, 282. In an action in Maine for injuries sustained in an automobile accident, an instruction precluding recovery by a guest against the driver, if it was found that the guest had drunk with the

host, was held by the court to have been properly refused, because it failed to state the amount of liquor drunk by the driver and its effect upon him, and also failed to require that the alleged intoxicated condition should have been the contributing cause of the accident. *Bubar v. Fisher,* 134 Me. 10, 180 A. 923. In Maryland, even though it is testified that a driver was intoxicated, and there is evidence to the contrary, the question of the contributory negligence of the plaintiff in entrusting her safety to the driver is a question which should be submitted to the jury. *Meese v. Goodman,* 167 Md. 658, 176 A. 621.

At the trial of the case at bar, Coffman testified: "I felt that I was in condition to drive that night. There was no question in my mind about my ability to handle the car properly." A state policeman testified that, at the time of his arrival on the scene, Coffman did not seem to be under the influence of alcoholic drinks. The defendants attempted to instruct the jury that if they found that Miss Reynolds rode in the automobile driven by Coffman, although she knew he had been drinking, she was guilty of contributory negligence. Another prayer asked for a directed verdict if the jury found that Coffman had taken three drinks during the evening. The trial court acted properly in refusing those prayers, since they omitted any reference to the extent of Coffman's intoxication, or whether Miss Reynolds detected, or ought to have been able to detect, any intoxication. The jury had the right to take into consideration all of the testimony in the case in deciding whether Miss Reynolds was guilty of contributory negligence.

As the trial court ruled properly on the prayers, we affirm the judgment entered for the use of the parents of the deceased.

*Judgment affirmed, with costs.*

OFFUTT, J., filed a dissenting opinion as follows, in which BOND, C. J., concurred.

The facts established by the uncontradicted evidence in this case are these:

On November 11th, 1938, Mary M. Reynolds, Raymond H. Coffman, and Mrs. Coffman left Cumberland in Coffman's automobile on a trip to Hancock. When they reached Hancock, Coffman had trouble with his automobile and he stopped at a garage, while Miss Reynolds and Mrs. Coffman went into a restaurant conducted by Paul E. Powers. While they were there engaged in drinking whisky mixed with coca cola, Coffman came in and asked for Powers. Shortly afterwards Powers came in and they spoke to him of going to Hagerstown. He told them he did not believe he wanted to go, that he had been hunting and was tired. Miss Reynolds and Mrs. Coffman urged him to go because they wanted to go dancing, and he finally agreed to go, changed his clothes, and they all drove to the Airport or Country Club in Hagerstown in his car. On the drive to Hagerstown, Powers drove. They reached the Airport Club at about nine or nine-thirty o'clock in the evening, got a table, ordered drinks, and continued to drink Scotch whisky and mixed drinks until twelve o'clock, when they returned to Power's automobile for the return trip. At that time it appears that Coffman was the only one of the group deemed by the others sober enough to drive, so that Powers, the owner of the car, Miss Reynolds, and Mrs. Coffman all united in requesting Coffman to do the driving. Neither Powers nor Mrs. Coffman was in any condition to drive, and Miss Reynolds apparently did not know how to drive, so all three joined in the request that Coffman drive. As a result of his reckless and negligent operation of the automobile, the car collided with a post, was wrecked, and Miss Reynolds was killed.

The equitable plaintiffs assert that Powers, as the owner of the car, is answerable for the negligence of Coffman. The defendant's position is that since the three united in appointing him, that Coffman was the agent of Miss Reynolds, Powers and Mrs. Coffman, and that consequently his negligence must be imputed to the three and that there can be no recovery.

The opinion in the case deals substantially with the theory of a joint enterprise. It is not clear that the relationship between the parties may be classified as that of a joint adventure, joint enterprise, master and servant or a partnership, although it has some of the qualities of each of those relations. It seems to be nothing more than the joint action of three persons in selecting a common agent to do an act for the common benefit of all. "Joint adventure" has a commercial connotation. A joint enterprise connotes a common purpose and common control. On the facts stated there was a common purpose, but there was no common control, because it is conceded that Coffman drove because no one of the other three was capable of driving. They all united in giving the control of the car to him. Powers was in the back seat too drunk to drive, and certainly not capable of exercising any control over the operation of the car. Under these circumstances I haven't been able to discover the theory on which liability can be properly fastened on Powers. The three, Miss Reynolds, Mrs. Coffman and Powers, united in the appointment of a common agent and each was responsible for the acts of that agent. If Coffman's negligence had resulted in injury to a third person, under the circumstances it would seem that the three would have been jointly liable for their agent's negligence. In the broadest significance of the word, an agent is a person or an instrumentality selected to do an act or to accomplish a definite result, and agency is a word the meaning of which varies infinitely as it is applied to different subjects. In the law of principal and agent, agent and agency have a much more restricted meaning, and are used to express the relation which is created where one person authorizes another to act for him in business transactions (2 *C. J. S., Agency*, sec. 1, page 1023; 1 *Mechem on Agency*, sec. 1; *A. L. I. Restatement, "Agency"* sec. 1, comment d; 2 *Am. Jur.* 12-14), and necessarily connotes the consent of the principal and the agent that the agent shall act for the principal in some transaction but subject to his control. *Ibid.* It is

obvious that the word is used here in its broader rather than in its restricted sense. The "control" assumed as a constituent element of the relation does not necessarily mean a constant ever present physical direction and guidance, but may mean the power to intervene and direct rather than the exercise of the power. Thus one may engage another to do an act, looking to him to bring about the desired results by such means as the agent may select, or he may himself supervise and direct the activities of the agent exerted to bring about the result. In either case the agent may be said to be under the control of the principal. Mechem, in considering representative action, says: "One person may act for another in a great variety of ways. Thus one may render to another a purely personal service, as where he acts as the valet or body servant of the latter or as a member of his domestic establishment. He may act for another in aiding to carry on the latter's industrial or mechanical enterprises, as where he tills his employer's fields, tends his flocks, works in his shop or factory or mine, or is employed upon his roads or ways. He may act for the other in aiding in the performance of the latter's legal or contractual obligations to third persons, as where he serves a public carrier, warehouseman or innkeeper in the performance of the latter's duties to the public. Or he may act as the representative of the other in business negotiations, that is to say in the creation, modification or termination of contractual obligations between that other and third persons." *Mechem on Agency*, sec. 2. In all of these cases the person employed to do the act represents and is in one sense of the word the agent of the person or persons appointing him, whether he be called a servant or an agent. Certainly in any such case the person appointed acts for and represents all those who appoint him, and whether he be called an agent or a servant, the principle of the law of agency, which imputes to the principals the negligence of his or their agent, applies.

Applying those principles to the facts here, it is found that three persons delegated to a fourth a duty which neither of the three was able to perform, driving an automobile in which they were passengers from Hagerstown to Hancock. They relinquished all control of it to him. Certainly no one of the three should be permitted to hold any one of the others responsible for the negligence of their common appointee.

But apart from that consideration, it seems obvious enough that the negligence of the decedent so far contributed to the happening of the accident as to bar a recovery. Mrs. Coffman and Miss Reynolds began drinking in Hancock. They reached the Airport place at about 9:30 P. M., and from that time until they left, about midnight, there were always drinks on the table, and the four were all drinking together, and when they left Miss Reynolds joined Powers and Mrs. Coffman in requesting Coffman to drive, not because they felt that he was sober but because they thought that he was not as drunk as they were.

The one prominent, decisive, and glaring act of negligence which was the primary and proximate cause of the accident, was that of entrusting a high powered automobile to a member of the party who had been drinking with the others all the evening, to drive it over a winding dangerous mountain road. And yet not only did Miss Reynolds acquiesce in that act, but she actively participated in bringing it about; and she, had she lived, could not have recovered against the defendant. *Berry, Automobiles,* sec. 682; *Powell v. Berry,* 145 Ga. 696, 89 S. E. 753; 5 *Am. Jur.* 774; *Schwartz v. Johnson,* 152 Tenn. 586, 280 S. W. 32; *Wayson v. Rainier Taxi Co.,* 136 Wash. 274, 239 P. 559.

These views, in which I am authorized to say Chief Judge Bond concurs, lead to a different conclusion than that reached by the majority of the court, and prevent our concurring therein.