BALTIMORE COUNTY, MARYLAND, ET AL. *v.* STATE, USE OF KEENAN ET AL.

[No. 313, September Term, 1962.]

*Decided July 29, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, MARBURY and SYBERT, JJ.

*W. Lee Harrison,* with whom were *Smith & Harrison* and *Richard C. Murray* on the brief for appellants.

*Marvin Ellin* and *William O. Goldstein,* on the brief for appellees.

BRUNE, C. J., delivered the opinion of the Court.

The widow and children and the administratrix of Joseph W. Keenan (who are referred to below collectively as the plaintiffs) brought suit in the Circuit Court for Baltimore County against three defendants for damages for the wrongful death of Keenan. The defendants were Thomas A. Blosser, the owner and driver of an automobile in which Keenan was a guest passenger, and Baltimore County, Maryland, the owner of a street sweeper with which the Blosser car collided, and W. L. Ensor, an employee of the County, who was operating the sweeper. Keenan suffered a ruptured heart from the collision and was killed immediately. The case was tried before a jury, which returned verdicts aggregating nearly $75,000.00 in favor of the plaintiffs and against all three defendants, and judgments were entered in accordance with the verdicts. Baltimore County and Ensor appeal from the judgments; Blosser does not.

The appellants seek reversal of the judgment and a new trial

on three grounds: first, the exclusion of expert medical testimony concerning the percentage of alcohol in the blood of the decedent's host driver; second, the refusal of instructions presenting to the jury the issue of the decedent's assumption of risk or contributory negligence in riding as a passenger in Blosser's car; and third, the allegedly misleading and prejudicial charge to the jury when considered as a whole.

The accident was extraordinary. Essentially it was a head on collision between Blosser's car and the County sweeper which occurred in one lane of a dual highway on a bright, sunny morning, on a dry, straight and level road, free of other traffic and parked cars. Blosser was headed north in one of the two northbound lanes, the one next to the curbed median strip which separated the two portions of the dual highway. The County sweeper was sweeping next to this same curb and was in the same lane as Blosser. It was, however, proceeding south in a northbound lane. The reason for this was that the only brush with which it was equipped that could sweep close to a curb was mounted under its right front corner.

Blosser was driving "nonchalantly," to use his own word, at a speed of thirty-five miles an hour, or perhaps a little faster, in what was testified by the Chief of the County Department of Traffic Engineering to be a thirty-mile limit zone (though Blosser said he thought it was thirty-five). Ensor was operating the sweeper at about three miles an hour. He first saw the Blosser car when it was a block or two away and thought it would turn to avoid the sweeper. When he realized that it would not, he stopped his vehicle. Blosser said that he saw a cloud of dust ahead of him, but did not realize that the sweeper was moving towards him until he was almost on it, and it was then too late to avoid the collision. Ensor says that he was using the sprinkler to keep down the dust and that he had a red flag on the sweeper and had its warning amber lights flashing. No markers were put out nor was there any flagman to direct traffic away from the lane Ensor was sweeping.

Prior to the accident Keenan, Blosser and a friend named Fred H. Taylor were employees of the Bethlehem Steel Company at its Sparrows Point plant. They had worked the shift from midnight of February 28-29 to about 7:45 A.M. of Febru-

ary 29, 1960, and left the plant together at about eight o'clock in Blosser's car, bound for Dundalk. There Taylor was to meet a nephew of his and go to the races, and Keenan was to get a bus to his home. Blosser had given Keenan a ride to Dundalk on prior occasions after work and usually took him to a bus stop at the Post Office. Before reaching that point, Blosser suggested that they stop at an inn and have a drink. They did so and were soon joined by Taylor's nephew. Taylor testified that they had four rounds of beer, each having a twelve-ounce bottle on each round, and that Blosser also ordered a two-ounce shot of whiskey. About half of this was spilled and he drank the rest. Blosser's testimony was substantially the same, except that he said he drank only three bottles of beer and half a "shot" of whiskey. The group spent about two hours at the inn. When they left, Taylor went with his nephew and Blosser set out with Keenan in the car to take Keenan to a bus stop. They had gone only 1500 feet when the collision occurred and Keenan was killed. Blosser testified that Keenan had not done anything to distract Blosser's attention from his driving, and also that he had not given any warning of the impending collision.

The appellants contend that Blosser was under the influence of intoxicating liquor when he and Keenan set out from the inn in Blosser's car and that Keenan knew it or should have known it, and therefore either assumed the risk of accident, or was guilty of contributory negligence in entering and riding in the car driven by Blosser.

A *post mortem* examination of Keenan included in the medical records introduced by the plaintiffs showed that Keenan's blood had an alcoholic content of 0.13% of alcohol. The police officer who investigated the accident said that he noticed the odor of alcohol on Blosser's breath just after the accident and that Blosser's speech was thick and mumbling, and that he made no effort to obtain a statement from Blosser at that time. Blosser was somewhat injured and was taken to a hospital. At the hospital the police officer learned from a doctor that Blosser had Parkinson's disease—a fact that the testimony showed was known to Keenan and to Taylor. As a result of learning that Blosser suffered from this disease, the officer did

not charge Blosser with driving while under the influence of intoxicating liquor, and no test of the alcoholic content of his blood was made. Soon after the accident, and because of it, Blosser was required to take a driver's test and was permitted to retain his license, without any restriction being imposed upon his driving. There is evidence that Parkinson's disease causes a slurring of speech, and that it caused Blosser to have a tremor in his arm; but there is no evidence as to what effect, if any, this disease has upon one's susceptibility to alcohol.

The *post mortem* examination of Keenan was made by Dr. Petty, State Assistant Medical Examiner. His qualifications as an expert on pathology and toxicology, including matters pertaining to the alcoholic content of blood, were conceded. He was called by the plaintiffs to prove the cause of Keenan's death, and his autopsy report showed that the decedent's blood had an alcoholic content of 0.13%. He was called by the appellants to testify as to how much beer the decedent would have had to drink during a period of two to two and a half hours before his death to produce this percentage of alcohol. His answer was a minimum of seven to eight twelve-ounce bottles of local beer. He testified that this determination could be made with reasonable medical certainty and scientific probability. He testified with regard to a well known formula used to make such determinations and placed it before the jury, and he made it clear that the weight of the drinker is a very important factor in the formula. The greater the weight, the more alcohol would have to be ingested to produce a given percentage of alcohol in the blood, and conversely the less the weight, the greater would be the percentage of alcohol in the blood produced by drinking the same amount of alcohol.

The testimony of Taylor was that all four of the group who had been drinking together at the inn just before the accident had drunk the same amount of beer—four bottles apiece—and Blosser's testimony was not substantially different as to the amount of alcohol each had consumed and the number of rounds of drinks.[1] There was also testimony that neither

---

1. Dr. Petty testified that local beer usually contains 4% to 5% of alcohol. A 12-ounce bottle of beer would therefore contain from .48 to .60 of an ounce of alcohol. A two-ounce "shot" of

Keenan, Blosser nor Taylor had had anything to drink on the way from the steel plant to the inn. There was a suggestion in a colloquy between the court and counsel that Keenan might have had a drink, possibly from a bottle kept in his locker or a "miniature," before leaving the plant, but there was no testimony to this effect.

The evidence proffered by the appellants was intended to show that Blosser's blood contained 0.18% of alcohol at the time of the accident. This would place him somewhat above the level of "clinical intoxication". of 0.15%. See address of Dr. Lewis P. Gundry in *Chemical Tests for Alcoholism,* 14 Md. L. Rev. 111, at 117. See also Code (1962 Cum. Supp.), Art. 35, § 100 (unchanged as to presumptions or inferences from percentages of alcohol in the blood from Ch. 769 of the Acts of 1959), which in terms applies to evidence in criminal cases, but has been considered as relevant in a civil case where it was claimed that an instruction should have been given on the question of whether the defendant was driving a car while under the influence of intoxicating liquor. *Alston v. Forsythe,* 226 Md. 121, 131-34, 172 A. 2d 474. Such an instruction was there refused and the ruling of the trial court was affirmed because of the insufficiency of the evidence to warrant its being given.

The ground upon which the trial court excluded the proffered testimony was that the evidence did not warrant a hypothetical question based upon the assumption that Blosser had consumed as much as seven or eight bottles of beer, since the strongest direct testimony (that of Taylor) showed that Blosser had had at the most four beers and an ounce of whiskey—roughly the equivalent of five twelve-ounce bottles of beer—in the two hours preceding the accident. On the other hand, the trial court permitted testimony with regard to the 0.13% alcoholic content of Keenan's blood to be used to refute the testimony of Taylor and Blosser with regard to the amount which the members of the party had drunk at the inn.

There have been many cases in this court involving the pro-

---

whiskey at 86 proof (43% alcohol) would contain .86 of an ounce of alcohol and at 100 proof (50% alcohol) would contain one ounce.

priety of hypothetical questions. We shall not review them extensively here. Among recent cases concerned with such questions and the bases upon which they may be founded, see *Twombley v. Fuller Brush Co.*, 221 Md. 476, 158 A. 2d 110; *Wolfinger v. Frey*, 223 Md. 184, 162 A. 2d 745; *State, Use of Solomon v. Fishel*, 228 Md. 189, 179 A. 2d 349. The *Solomon* case cited the statement in *Gordon v. Opalecky*, 152 Md. 536, 548-49, 137 A. 299, of two ways in which questions addressed to expert medical witnesses to elicit their opinions based upon facts not within their personal knowledge or observation "are usually and properly asked." The second of these "is to state to the witness such facts as are essential to the formation of a fair and intelligent opinion, ask him to assume the truth of the facts so stated, and to express an opinion upon them."

Applying that test to the question here sought to be propounded, we think that the question was proper. It was founded upon the medical, scientific fact that Keenan's blood contained 0.13% alcohol, upon a reliable scientific formula, with which the expert witness was thoroughly familiar, by which the amount of alcohol, and hence the quantity of beer from which it had been derived, consumed by the decedent within a period of two to two and a half hours before the accident could be computed, and upon testimony that all members of the group (including Blosser) had consumed substantially the same amount of drinks in the same time. Each of these facts assumed to be true by the question proposed was supported by evidence in the case. That one fact assumed to be true was shown through a deduction made by the expert himself by applying an objective, scientific formula to other evidence, does not render it a fact unsupported by evidence. Cf. *Williams v. Dawidowicz*, 209 Md. 77, 120 A. 2d 399. Nor does the fact that it rested upon one part of the testimony of a witness (Taylor), that all members of the group drank approximately the same amount, and that it rejected another part of his testimony, that they had only four beers apiece (plus an ounce of whiskey for Blosser) create any internal conflict in the facts assumed. The foundation was laid for the expression of an expert opinion which could be of assistance to the jury. That an expert opinion will be of such assistance is the basic test of its admissibility. *Wil-*

liams v. Dawidowicz, supra; Shivers v. Carnaggio, 223 Md. 585, 165 A. 2d 898; Harper v. Higgs, 225 Md. 24, at 38, 169 A. 2d 661; Marlow v. Davis, 227 Md. 204, 176 A. 2d 215; Farley v. Yerman, 231 Md. 444, 451, 190 A. 2d 773, and cases therein cited. In Farley, the experts inspected the premises and equipment after the accident, but there had been no intervening change in conditions. The exclusion of their proffered testimony was held erroneous. (See 231 Md. at 450-51.) See also, Marder v. City of Baltimore, 232 Md. 299, 192 A. 2d 512.

We are accordingly of the opinion that the proffered evidence was admissible. Its weight was, of course, a matter for the determination of the jury.

The other principal contention relates to the alleged assumption of risk or contributory negligence on the part of Keenan in riding as a passenger in a car driven by a driver under the influence of intoxicating liquor.

Probably the leading case in this State dealing with this subject is Powers v. State, Use of Reynolds, 178 Md. 23, 11 A. 2d 909. In that case, decided by a divided court (3-2, Judges Offutt and Bond dissenting), the majority opinion, written by Judge Delaplaine, states:

"It was further contended that Miss Reynolds [the person for whose death the suit was brought] was guilty of contributory negligence because of a voluntary assumption of risk. The test in determining voluntary assumption of risk is whether there was an intentional and unreasonable exposure to danger, which the plaintiff either knew or had reason to know. A guest is not negligent in riding with an intoxicated driver, if he is unaware of the intoxication or does not notice any facts which would arouse the suspicions of a person of ordinary prudence. * * * It has been repeatedly held that a guest is not contributorily negligent as a matter of law in riding in an automobile, after he and the driver have been drinking together. So, on the issue of a guest's contributory negligence in riding with an intoxicated driver, such questions as the amount of intoxicating liquor the driver had consumed, the extent of the driver's intoxication, and how much the guest was aware of it, are usually questions for the jury in determining whether there was an assumption of risk. * * * In Maryland, even though it

is testified that a driver was intoxicated, and there is evidence to the contrary, the question of the contributory negligence of the plaintiff in entrusting her safety to the driver in a question which should be submitted to the jury. *Meese v. Goodman,* 167 Md. 658, 171 A. 621." (178 Md. 31-33.)

The majority opinion in *Powers* concluded its discussion of this phase of the case with the statement: "The jury had the right to take into consideration all of the testimony in the case in deciding whether Miss Reynolds was guilty of contributory negligence." The dissenting opinion, written by Judge Offutt, viewed the evidence as showing that the driver of the car was asked to drive by other members of the group (including Miss Reynolds who could not drive) who had been drinking together, "not because they felt that he was sober, but because they thought that he was not as drunk as they were." Their action in entrusting the driving of the car to a member of the party who had been drinking with them all evening, to drive it over a winding, dangerous, mountain road was a glaring act of negligence, which was the primary and proximate cause of the accident (running off the road and hitting a guard rail), and that such negligence should bar recovery. (178 Md. at 37.)

The close relationship and overlapping in some cases between assumption of risk and contributory negligence are strongly suggested in the *Powers* case. See also, Restatement, 2 *Torts,* § 466, especially Comments *c, d* and *e;* 2 Harper & James, *The Law of Torts,* § 21.1, p. 1162; Prosser, *Torts* (2d Ed.) § 55, pp. 303-305; and annotation, 82 A.L.R. 2d 1218, on the *Distinction between assumption of risk and contributory negligence.* That there is a distinction between the two is recognized by the decisions of this Court. It was thus stated by Chief Judge Bond in *Warner v. Markoe,* 171 Md. 351, at 359, 189 A. 260, at 264: "The distinction between contributory negligence and voluntary assumption of risk is often difficult to draw in concrete cases, and under the law of this state usually without importance, but it may be well to keep it in mind. Contributory negligence, of course, means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntary incurring that of an accident which may not occur, * * *. Contributory negligence defeats

recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs." See also, *Gordon v. Maryland State Fair*, 174 Md. 466, at 469, 199 A. 519; *People's Drug Stores, Inc. v. Windham*, 178 Md. 172, at 186, 12 A. 2d 532; *Evans v. Johns Hopkins Univ.*, 224 Md. 234, 167 A. 2d 591; *Jimmy's Cab Co. v. Isennock*, 225 Md. 1, at 7-8, 169 A. 2d 425.

As presented in this Court, *Warner v. Markoe, supra,* was a suit by a guest passenger against a host automobile owner, since a third party motorist involved in the collision and originally joined as a defendant had been let out of the case on a directed verdict, and there was no appeal as to him. Also, although the plaintiff guest and defendant host had been drinking heavily, the driver of the car, who had been employed by the defendant, had had no intoxicating drink at all. He was alleged to have driven recklessly at excessive speed. The defense of contributory negligence or assumption of risk rested upon the plaintiff's continuing to ride in the car driven by this man, without comment or protest, notwithstanding the plaintiff's experience with this driver over a number of hours preceding the collision. It was held that there was legally sufficient evidence to support a finding of either contributory negligence or assumption of risk, but that it was not enough to require a directed verdict "on that ground." Judge Bond then said that it was "questionable whether it is, strictly speaking, contributory negligence that is referred to in the main part of this argument." Next followed the statement of the distinction between the two which we have quoted above.

The distinction between contributory negligence and assumption of risk stated in *Warner v. Markoe, supra,* is substantially that between contributory negligence and what Harper & James, *op. cit. supra,* Vol. 2, § 21.1, p. 1162, call the "primary sense" of assumption of risk. "In its primary sense," they say, "assumption of a risk is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk. In such a case plaintiff may not recover for his injury even though he was quite reasonable in encountering the risk that caused it. Volenti non fit injuria." They then state that "[a] plaintiff may

also be said to assume a risk created by defendant's breach of duty towards him when he deliberately chooses to encounter that risk," that except possibly in master and servant cases, he "will be barred from recovery only if he was unreasonable in encountering the risk under the circumstances," and that "[t]his is a form of contributory negligence." They call it "assumption of risk in a secondary sense."

Prosser, *Torts* (2nd Ed.), § 55 adopts a somewhat similar classification, breaking assumption of risk cases down into four categories, the first three of which would seem to fall within the "primary sense" of the term, and the fourth of which would fall under its "secondary sense." He agrees (p. 305) that except in cases of express agreement, the defense of assumption of risk introduces nothing that is not fully covered by the idea of an absence of duty on the part of the defendant or by that of contributory negligence on the part of the plaintiff. He thinks, however, that "the term does serve to focus attention upon the element of consent to take a chance, or of voluntary acceptance of a known risk, which is sometimes, but not always involved in both of the other ideas."

*Meistrich v. Casino Arena Attractions, Inc.*, 31 N. J. 44, 155 A. 2d 90, draws much the same distinctions and takes the view that where assumption of risk is used in its secondary sense, the actual term "assumption of risk" should not be used in instructing the jury and that the subject should be dealt with under the charge on contributory negligence. Such an instruction was given in *Bull Steamship Lines v. Fisher*, 196 Md. 519, 77 A. 2d 142, and was held by this Court to be a sufficient presentation of the issue of assumption of risk—an issue which, this Court held, the defendant was entitled to have presented to the jury—even though the term "assumption of risk" was not used in the charge. Chief Judge Marbury there said: "While assumption of risk and contributory negligence * * * are not the same, nevertheless they may arise from the same fact, and, in a given case, a discussion of one may necessarily include the other," and referred to *Hilton Quarries, Inc. v. Hall*, 161 Md. 518, 158 A. 19. The charge in *Bull Steamship* left it to the jury to consider whether the plaintiff "took proper precautions for his own safety."

This is, of course, a vital element of contributory negligence, which is thus defined in *Potts v. Armour & Co.,* 183 Md. 483, at 490, 39 A. 2d 552: "Contributory negligence is the neglect of duty imposed upon all men to observe ordinary care for their own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." See also *Northern Central Ry. Co. v. State, Use of Price,* 29 Md. 420, 435, where it was said: "if the deceased, by his own negligence or want of ordinary care and caution, so far contributed to his misfortune, that, but for such negligence or want of ordinary care and caution on his part, the misfortune and damage complained of would not have occurred, this action could not be sustained."

Contributory negligence assumes negligence on the part of the defendant, and to bar the plaintiff from recovery must be such negligence as directly contributes to his injury. *Goldman v. Johnson Motor Lines, Inc.,* 192 Md. 24, at 32, 63 A. 2d 622. It seems clear that entrusting one's safety to a driver whom one knows or ought to know to be intoxicated may constitute contributory negligence. *Neese v. Goodman, supra.*

Though primary negligence and contributory negligence are often thought of as simply opposite sides of the same coin, there is one difference between them which seems of significance here. This is that primary negligence involves a breach of duty owed to another, contributory negligence involves a failure to take proper precautions for one's own safety. See the definition above quoted from *Potts v. Armour & Co.;* the *Northern Central Ry.* and *Goldman* cases above cited; Restatement, *Torts,* § 463; Prosser, *Torts* (2nd Ed.) § 51, p. 283; 2 Harper & James, *Torts,* § 22.10.

That entrusting one's safety to a driver whom one knows, or ought to know, to be intoxicated might amount to contributory negligence, is clear from *Meese v. Goodman, supra,* 167 Md. at 662, and from both the majority and dissenting opinions in *Powers v. State, Use of Reynolds,* above referred to. The matter of causation apparently did not call for comment. Whether such conduct should be considered as amounting to assumption of risk as described in *Warner v. Markoe, supra,*

or as contributory negligence which contributes to the injury complained of, seems to make little practical difference here, *Bull Steamship Lines v. Fisher, supra;* nor need we dwell further on the view that what may amount to assumption of risk in the secondary sense is itself a form of contributory negligence.

There is, however, one phase of contributory negligence which may be considered here. This is that because of Keenan's knowledge that Blosser had been drinking, he may have had a greater obligation than would ordinarily rest on a passenger to be on the lookout and to warn Blosser of impending danger, and his failure to give any warning when danger was apparent might have amounted to contributory negligence on Keenan's part. See *Blashfield's Cyclopedia of Automobile Law and Practice* (Perm. Ed.), Vol. 4, Pt. 1, § 2453.

Many cases in other jurisdictions deal with defenses both of assumption of risk and of contributory negligence where a passenger voluntarily embarks in an automobile to be driven by a person whom he knows or should know to be intoxicated. It seems an unnecessary task to attempt to classify these cases as between those which go on one theory or the other (or perhaps on both) or to cite many of these cases, since the same basic considerations seem to us to be applicable to either defense. Most of them involve suits by a guest passenger against the driver or the owner of the vehicle who is or may be responsible for the driver's negligence, and many of them arise under so called guest statutes, which often bar recovery by guest passengers against their hosts for ordinary negligence.

The appellees contend that assumption of risk on the part of a passenger may not be invoked by a third party tortfeasor, such as the owner or driver of another vehicle involved in a collision. In support of this contention they cite *Schubring v. Weggen,* 234 Wis. 517, 291 N.W. 788, which simply states flatly that the Wisconsin "doctrine of assumption of risk in automobile collision cases does not apply except in cases of guest against host." This statement appears to be based upon a general limitation in Wisconsin upon the scope of the doctrine of assumption of risk. The annotation in 82 A.L.R. 2d 1218, above cited, states at p. 1225 that the defense is available

in Wisconsin in an action for common law negligence only where there is some "contractual relationship with the plaintiff, such as master and servant, or carrier and passenger for hire, or host and guest," and is not available to a stranger to such relationship. We think that the application of the doctrine is not so limited in Maryland. See *Gordon v. Maryland State Fair, People's Drug Stores, Inc. v. Windham, Evans v. Johns Hopkins Univ.,* and *Jimmy's Cab Co. v. Isennock,* all cited above, and *Velte v. Nichols,* 211 Md. 353, 127 A. 2d 544, and *Le Vonas v. Acme Paper Board Co.,* 184 Md. 16, 40 A. 2d 43.

It may also be noted that *Schubring* was a guest-host case and that no third party was involved. The main thrust of the opinion is to emphasize that the same considerations are applicable to both contributory negligence and assumption of risk. The Wisconsin court said in part: "Contributory negligence and assumption of risk, if the former does not include the latter, are at least sufficiently related to bring both host and guest under the same rule as to non-exemption from responsibility."

In addition to *Schubring v. Weggen, supra,* the appellees might also have cited two Washington cases, *Smith v. Harris,* 248 P. 2d 551, and *Miller v. Treat,* 358 P. 2d 143, which hold that the protection of the doctrine of assumption of risk is not available to the driver of a second vehicle involved in a collision, if he is negligent. They proceed upon a different ground from that taken in Wisconsin, and rest upon the view that to allow assumption of risk to be invoked would run counter to the usual rule that the negligence of the driver is not to be imputed to his passenger. We are unable to agree with this view. It seems to us to deny full effect to the plaintiff's election to incur a risk if the case is viewed as one of assumption of risk in its primary sense. If the case be considered as one of contributory negligence on the part of the passenger himself in entrusting his safety to an intoxicated driver, no question of imputed negligence is presented.

The great majority of the cases involving suits by passengers in cars operated by intoxicated drivers appear to have been against the driver (or one responsible for his negligence). However, most of the cases to which we have been referred or which our research has found in which the question here pre-

sented has arisen have extended the bar of assumption of risk or of contributory negligence beyond a suit against the intoxicated driver of the car in which the plaintiff was a passenger (or someone bound to respond for that driver's negligence) and have extended it in favor of a third party alleged to have been negligent. Such a case is *Packard v. Quesnal,* 112 Vt. 175, 22 A. 2d 164, at 167, in which the court said:

"Reason and authority alike support the rule that if a person voluntarily rides in an automobile driven by one who is intoxicated and the passenger knows, or under the circumstances should have known, the intoxicated condition of the driver he is precluded from recovering from such driver or a third person for injuries sustained in an accident if the intoxicated condition of the driver was the proximate cause or one of the proximate causes of the accident producing the injuries in question. This statement of the law although not therein set forth in exactly the same words is supported by the following authorities: Hartley v. Berg, 145 Or. 44, 25 P. 2d 932; Lynn v. Goodwin, 170 Cal. 112, 148 P. 927, L.R.A. 1915 E, 588; Rau v. Smuda, 175 Minn. 328, 221 N. W. 232; Shiflett's Admx. v. Virginia Ry. & Power Co., 136 Va. 72, 116 S. E. 500; Nettles v. Your Ice Co., 191 S. C. 429, 4 S. E. 2d 797; Schwartz v. Johnson, 152 Tenn. 586, 280 S. W. 32, 47 A.L.R. 323; Wayson v. Rainier Taxi Co., 136 Wash. 274, 239 P. 559, 45 A.L.R. 290; McGrath v. Nugent, 133 Neb. 237, 274 N. W. 549; 4 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., § 2453; 2 Restatement, Torts, 1230, § 466; 5 Am. Jur. 774, § 483; 42 C. J. 853, [854], § 534."

Of the cases above cited in *Packard, Lynn v. Goodwin* and *Shiflett's Adm'x v. Virginia Ry. & Power Co.* involved suits against third parties charging them with negligence contributing to the accident.

A recent case decided by the United States District Court for the District of Delaware is to the same effect as *Packard.* This is *Davis v. Brooks Transp. Co.,* 186 F. Supp. 366, which takes the view that the plaintiff passengers in the car driven by a drunken driver which ran into the defendant's truck were barred by assumption of risk or contributory negligence, "it does not matter which." See also *Todd v. Jackson,* 283 F. 2d 371 (C.A., D.C.).

Additional cases involving third parties reaching a like result on either assumption of risk or contributory negligence are: *Lightell v. Tranchina* (La. App.), 115 So. 2d 890 (occupants of both cars had been engaged in common drinking venture) ; *Otis v. New Orleans Public Service, Inc.* (La. App.), 127 So. 2d 197 (assumption of risk as against host; contributory negligence as against third party) ; *Clinton v. City of West Monroe* (and companion cases) (La. App.), 187 So. 561, 829, 830, (city drainage ditch not fenced) ; *Mooneyhan v. Benedict* (Tex. Civ. App.), 284 S. W. 2d 741. See also: 8 Am. Jur. 2d, *Automobiles and Highway Traffic,* § 537; 61 C.J.S., *Motor Vehicles,* § 492; and *White v. State Mutual Auto Ins. Co.,* 222 La. 994, 64 So. 2d 245, 42 A.L.R. 2d 338 (rule recognized—assumption of risk—but not found applicable on facts.)

In our opinion, the rule is sound that assumption of risk or contributory negligence may bar recovery by the guest passenger of a drunken driver, who knows or should know of the driver's condition, if the driver's negligence, due to his intoxication, is a proximate cause of the accident causing injury or death to the passenger in a suit against a third party, as well as in a suit against the host. The risk of injury through a highway accident in which not only the driver of the passenger's car, but also the driver of another vehicle is negligent, is quite as real and apparent as the risk that the host will run off the road and hit a tree or a culvert, as has happened in many cases. In either aspect of the rule it is the plaintiff's own recklessness that raises the bar.

We think it evident that Blosser's negligence was a proximate cause of the accident in the instant case. It is a rather close question whether the evidence admitted at the trial was sufficient to go to the jury as showing that Keenan knew or ought to have known that Blosser was too intoxicated to be in condition to drive safely when they left the inn, but we are inclined to think that it was. It is true that Taylor, a member of the group who had been drinking together, expressed the view that Blosser was then "sober," but his opinion, though entitled to weight, would hardly be conclusive. The apparently reckless manner in which the car was driven a few moments later was in itself suggestive of intoxication of the driver. If

Dr. Petty's proferred testimony which was excluded had been in evidence, the evidence would have been somewhat stronger on this score. We are unable to agree with the appellee's contention that the appellants succeeded in getting into evidence practically everything that they sought to establish by their proffer.

We are of the opinion that the trial court was in error in excluding the proffered testimony as to the alcoholic content of the blood of the driver of the car in which the plaintiffs' decedent was a passenger and in refusing to give an instruction based upon assumption of risk or contributory negligence on the part of the plaintiffs' decedent because of the possible intoxication of the driver and that the instruction as to contributory negligence as given should have gone further and should have referred to the added duty to keep a lookout and to warn, which knowledge of the driver's drinking may have imposed upon the passenger.

Other criticisms by the appellants of the court's instructions as a whole do not call for extended comment. We think that the question of whether the appellants were negligent or not was properly and adequately submitted to the jury. We therefore see no occasion for a retrial of this issue. The appellants concede that there is no occasion to retry the amount of damages, if they are liable at all; and the appellees have raised no issue by cross-appeal relating to the amount of damages. We therefore see no occasion to retry that issue.

Accordingly, the judgment is reversed and the case is remanded for a new trial on the question of whether there was either assumption of risk or contributory negligence on the part of the plaintiffs' decedent.

> *Judgment reversed and case remanded for a new trial in accordance with this opinion; the costs to abide the event of the new trial.*